**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Elmer E. MOZEE, Jr., Defendant-Appellant.**

No. 84SA411.

Supreme Court of Colorado, En Banc.

June 23, 1986.

Rehearing Denied July 14 and Aug. 25, 1986.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Eric Perryman, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colo. State Public Defender, Douglas D. Barnes, Deputy State Public Defender, Denver, for defendant-appellant.

LOHR, Justice.

The defendant, Elmer E. Mozee, Jr., appeals from his judgment of conviction for first degree assault,[1] which was determined to be a crime of violence.[2] Mozee asserts that the trial court erred by failing to advise him before he took the stand during his jury trial that he had the right not to testify. Mozee also argues that the statutes under which he was sentenced violate his constitutional rights to equal protection of the laws. Finally, Mozee contends that the trial court's instruction to the jury on crime of violence was fatally flawed. We find no merit in the first two assignments of error. We agree that the instruction on crime of violence was erroneous, but conclude that the error was harmless. Therefore, we affirm the judgment.

I.

The defendant's conviction for first degree assault stems from a shooting incident that occurred in Denver on September 3, 1982. In October of 1982, Mozee was charged by information in Denver District Court with attempted first degree murder, first degree assault and the commission of a crime of violence. The victim and other witnesses testified that Mozee and the victim lived in different apartments in an apartment house and that an altercation between the two men occurred in the early evening on September 3 while the victim was sitting on the front porch of the apartment house. These witnesses further testified that Mozee left the scene while the victim and others remained on the porch and that Mozee returned to the porch at approximately 10:00 p.m. and shot the victim twice with a handgun. Mozee testified in his own behalf. He confirmed that he and the victim had exchanged words during the early part of that evening and that he had fired the shots that struck the victim. Mozee's defense was that the handgun had discharged accidentally.

The jury was instructed on the crimes of attempted first degree murder, attempted second degree murder, first degree assault and second degree assault. The jury returned a verdict of guilty of first degree assault, but was unable to reach a unanimous verdict as to the attempted murder charge. The trial court then dismissed the attempted murder count on the motion of the prosecution. The court next instructed the jury as to the crime of violence charge. Specifically, the jury was asked to determine whether in the course of commission of the offense of first degree assault, Mozee "used or possessed or threatened the use of a deadly weapon." The jury found that he did. Pursuant to the mandatory sentencing requirements of the crime of violence statutes, *see* §§ 16–11–309 and 18–1–105(9)(a)(I), 8 C.R.S. (1985 Supp.), the district court sentenced Mozee to nine years imprisonment plus one year of parole.

Mozee appealed.[3] He contends that the trial court committed reversible error by failing to advise him before he took the stand that he had a constitutional right not to testify. Mozee further contends that the crime of violence statute as applied to

---

1. § 18–3–202(1)(a), 8 C.R.S. (1978).

2. § 16–11–309, 8 C.R.S. (1985 Supp.).

3. Mozee filed his appeal in the court of appeals. The appeal was transferred to this court pursuant to section 13–4–110, 6 C.R.S. (1973), because Mozee contends that the crime of violence statute as it applies to the first degree assault and second degree assault statutes violates his constitutional right to equal protection of the laws. The court of appeals does not have subject matter jurisdiction over cases in which the constitutionality of a statute is in question. § 13–4–102(1)(b), 6 C.R.S. (1973).

increase a sentence for first degree assault violates the constitutional requirement of equal protection of the laws because its application obliterates any meaningful distinction between first degree assault and second degree assault, while mandating disparate punishments. Finally, Mozee argues that the trial court erred in its instruction to the jury concerning the crime of violence charge.

We conclude that the district court did not err in omitting to advise Mozee on the record that he need not testify. We also conclude that the crime of violence statute as applied to increase a sentence for first degree assault does not violate constitutional guarantees of equal protection of the laws. Finally, we agree with Mozee that the crime of violence instruction given by the district court was erroneous, but we hold that the error was harmless.

## II.

After the prosecution presented its case, Mozee took the witness stand and testified in his own behalf. Prior to his testimony,

the trial court did not advise the defendant that he had the right to remain silent or of the consequences of waiving that right, and the court made no effort at that time to determine whether Mozee was voluntarily, knowingly and intelligently waiving his right to remain silent. After his convictions, Mozee filed a motion for a judgment of acquittal or in the alternative for a new trial. Relying on the Colorado Court of Appeals' decision in *People v. Curtis*, 657 P.2d 990 (Colo.App.1982), *aff'd*, 681 P.2d 504 (Colo.1984), he asserted for the first time that "[t]he Court erred in failing to advise the defendant that he had a right not to testify." The district court denied the motion, and Mozee raises the same argument on appeal.

■ In *Curtis*, we held that when a defendant elects not to testify, a trial court must determine, after an advisement on the record, that the defendant is aware of his right to testify and of the consequences of testifying and that the defendant has voluntarily, knowingly and intelligently [4] cho-

---

4. In *Curtis*, we referred to a waiver of the right to testify as being valid when it is made "voluntarily, knowingly and *intentionally.*" 681 P.2d at 511, 514, 515 (emphasis added). In other cases concerning the waiver of various fundamental constitutional rights, we have used various combinations of these terms and generally have used the term "intelligently" rather than "intentionally." *See, e.g., People v. Chase*, 719 P.2d 718, 720 (Colo.1986) (knowingly, intelligently and voluntarily); *People v. Spring*, 713 P.2d 865, 869 n. 3, 870, 872–73, 874 (Colo.1985), *cert. granted*, — U.S. —, 106 S.Ct. 1961, 90 L.Ed.2d 368 (U.S.1986) (No. 85–1517) (voluntarily, knowingly and intelligently); *People v. Pierson*, 670 P.2d 770, 775, 776 (Colo.1983) (knowing and intelligent); *People v. Helm*, 633 P.2d 1071, 1075 (Colo.1981) (knowing and intelligent). *But see People v. Richards*, 194 Colo. 83, 86, 568 P.2d 1173, 1175 (1977) (intentional relinquishment of known right); *People v. Harrington*, 179 Colo. 312, 315, 500 P.2d 360, 361 (1972) (voluntarily, knowingly and intentionally; intelligent, voluntary). The United States Supreme Court has been similarly imprecise in its use of terms when describing the attributes of a valid waiver. *See, e.g., Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (voluntarily, knowingly and intelligently), 475, 86 S.Ct. at 1628 (knowingly and intelligently), 476, 86 S.Ct. at 1629 (voluntary), 479, 86 S.Ct. at 1630 (knowingly and intelligently) (1966); *John-*

*son v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (intentional relinquishment of known right; intelligent waiver), 465, 58 S.Ct. at 1023 (intelligent and competent) (1938).

There is no indication in the cases that differing standards are intended by the use of different terms. The use of precise terminology is not important as long as certain principles are recognized and applied when the validity of such a waiver is being examined. The cornerstone was set in *Johnson v. Zerbst* as follows:

A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case....

304 U.S. at 464, 58 S.Ct. at 1023. In addition, the accused must not be forced by the state to relinquish his right. *Cf. Miranda v. Arizona*, 384 U.S. at 476, 86 S.Ct. at 1629 (statement forced by "the compelling influence of interrogation" "is inconsistent with any notion of a voluntary relinquishment of the privilege").

Thus, a valid waiver must be "knowingly" made, that is, the person waiving the particular right must "know" of the existence of the right and any other information legally relevant to the making of an informed decision either to exercise or relinquish that right. Second, the waiver must be made "intentionally" and "intel-

sen to waive that right. In reaching that conclusion, we held that a defendant in a criminal case has a constitutional right to testify in his own defense under the due process clauses of the fourteenth amendment to the United States Constitution and article II, section 25, of the Colorado Constitution. 681 P.2d at 509–11. We further held that this constitutional right is sufficiently fundamental and personal that it can be waived only by the defendant and not by his attorney and that certain procedural safeguards are required to ensure that any waiver of the right to testify is made voluntarily, knowingly and intelligently. *Id.* at 511–14. In order for a defendant to make such a decision in a voluntary, knowing and intelligent manner, we held that the defendant "must be aware that he has a right to testify, he must know of the consequences of testifying, and he must be cognizant that he may take the stand notwithstanding the contrary advice of counsel." *Id.* at 514. We also held that the responsibility of ascertaining whether there has been a valid waiver is imposed upon the trial judge and that this determination should appear upon the record. *Id.* We concluded by describing the procedure to be followed by a trial court in these instances:

A trial court exercising appropriate judicial concern for the constitutional right to testify should seek to assure that waiver is voluntary, knowing and intentional by advising the defendant outside the presence of the jury that he has a right to testify, that if he wants to testify then no one can prevent him from doing so, that if he testifies the prosecution will be allowed to cross-examine him, that if he has been convicted of a felony the prosecutor will be entitled to ask him

about it and thereby disclose it to the jury, and that if the felony conviction is disclosed to the jury then the jury can be instructed to consider it only as it bears upon his credibility. In connection with the privilege against self-incrimination, the defendant should also be advised that he has a right not to testify and that if he does not testify then the jury can be instructed about that right.

*Id.* (footnote and citation omitted).

The case now before us presents the opposite side of the coin from *Curtis*. Mozee claims that a trial judge has an obligation to advise a defendant on the record that the defendant has a right *not* to testify when the defendant indicates that he intends to take the stand and testify in his own behalf. Additionally, Mozee asserts that the trial judge must determine on the record at that time whether the defendant voluntarily, knowingly and intelligently waives the right not to testify. Mozee contends that the absence here of such an advisement and determination constitutes reversible error. We disagree.

■ Section 18 of article II of the Colorado Constitution protects every person from being "compelled to testify against himself in a criminal case." Such protection is also provided by the fifth amendment to the United States Constitution, made applicable to the states by the fourteenth amendment, *see Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). The privilege against self-incrimination embodied in these constitutional provisions protects an individual from being involuntarily called as a witness against himself in his own criminal prosecution and also allows any witness to refuse to answer questions in any proceeding, civil or criminal, formal or informal, when the answers

---

ligently," that is, the person waiving that right must be fully aware of what he is doing and must make a conscious, informed choice to relinquish the known right. And, third, that conscious choice must be made "voluntarily," that is, not coerced by the state either physically or psychologically. Throughout this opinion, we will refer to a valid waiver as one that is made "voluntarily, knowingly and intelligently," instead of using the *Curtis* formulation, to be

more consistent with the majority of the previous opinions of this court and the United States Supreme Court.

It should be noted that the terms "knowingly" and "intentionally," when used in this context, are not intended to have the same meaning as when those terms are employed in the Colorado Criminal Code to denote two separate levels of criminal culpability. *See* §§ 18–1–501(5) and (6), –503, 8 C.R.S. (1978).

might incriminate that witness. *Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973); *see* 3 W. LaFave & J. Israel, *Criminal Procedure*, § 23.4(a) at 26–27 (1984) (and cases and texts cited therein).

■ These principles reflect the well-recognized fact "that the American system of criminal prosecution is accusatorial, not inquisitorial, and that the Fifth Amendment privilege is its essential mainstay." *Malloy v. Hogan*, 378 U.S. at 7, 84 S.Ct. at 1493. *See also Rogers v. Richmond*, 365 U.S. 534, 540–41, 81 S.Ct. 735, 739–740, 5 L.Ed.2d 760 (1961). The privilege of a defendant to remain silent "unless he chooses to speak in the unfettered exercise of his own will" is sufficiently important that the constitution further guarantees that no adverse inferences are to be drawn from the exercise of that privilege at trial. *Carter v. Kentucky*, 450 U.S. 288, 305, 101 S.Ct. 1112, 1121, 67 L.Ed.2d 241 (1981) (quoting *Malloy v. Hogan*, 378 U.S. at 7, 84 S.Ct. at 1493). The privilege forbids both comment by the prosecutor on the accused's silence and instructions by the court that such silence is evidence of guilt. *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Moreover, the defendant is entitled to have the jury instructed that it may not draw any inferences adverse to the defendant on the basis of the fact that he did not testify. *Carter v. Kentucky*.

■ It has long been recognized, however, that a defendant who voluntarily takes the stand and offers testimony in his own behalf is subject to cross-examination. *See Brown v. United States*, 356 U.S. 148, 154–56, 78 S.Ct. 622, 626–27, 2 L.Ed.2d 589 (1958); *Fitzpatrick v. United States*, 178 U.S. 304, 315–16, 20 S.Ct. 944, 948–49, 44 L.Ed. 1078 (1900); *Reagan v. United States*, 157 U.S. 300, 304–05, 15 S.Ct. 610, 611, 39 L.Ed. 709 (1895); 3 LaFave & Israel, *Criminal Procedure*, § 23.4(a) at 27–28 (and cases and texts cited therein). This consequence is based on the perception that it would be unfair to permit a defendant to place his version of the facts before the jury without subjecting himself to cross-examination. *Id.* The practical result of a decision by a defendant to testify, therefore, is to effect a waiver of his constitutional privilege against self-incrimination, at least to the extent necessary to permit effective cross-examination. *See Brown v. United States*, 356 U.S. at 154–56, 78 S.Ct. at 626–27; 3 LaFave & Israel, *Criminal Procedure*, § 23.4(a) at 27–28 (and cases and texts cited therein). Thus, by choosing to testify, Mozee waived an important constitutional right. We next must determine the standards by which the validity of that waiver is to be tested and the procedures that are required in order to assure that any decision by a defendant to offer testimony in his own behalf is constitutionally effective.

■ We held in *Curtis* that the constitutional right to testify in one's own defense is so inherently personal and basic that it can be waived only by the defendant and not by his attorney and that to be effective the waiver must be made voluntarily, knowingly and intelligently. *People v. Curtis*, 681 P.2d at 511–12; *see Johnson v. Zerbst*, 304 U.S. 458, 464–69, 58 S.Ct. 1019, 1023–25, 82 L.Ed. 1461 (1938). We see no principled basis for viewing differently the importance of a defendant's privilege against self-incrimination or the personal nature of the decision to waive that privilege. Truly, we are considering a single decision—to testify or not. Either choice involves the consequence that the defendant will forgo a basic and important right—the right to testify if he elects not to take the stand, or the right to remain silent if he does. We hold, therefore, that a waiver of the right to remain silent resulting from an election to testify must be made by the defendant personally and must be made voluntarily, knowingly and intelligently if it is to be effective. *Cf. Miranda v. Arizona*, 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966) (waiver of privilege against self-incrimination in custodial interrogation context must be made voluntarily, knowingly and intelligently); *People v.*

*Chase,* 719 P.2d 718, 720 (Colo.1986) (same).

■ It remains to be resolved whether the trial court must advise the defendant of his right not to testify and must determine the effectiveness of his waiver of the privilege against self-incrimination on the record before the defendant testifies. Certainly, when the validity of such a waiver is called into question, the responsibility is placed upon the trial judge to determine whether there has been a voluntary, knowing and intelligent waiver of the privilege against self-incrimination by the defendant. *Johnson v. Zerbst,* 304 U.S. at 465, 58 S.Ct. at 1023; *People v. Curtis,* 681 P.2d at 514. Such a determination, whenever and however made, should appear on the record. *Id.* It does not necessarily follow, however, that as a condition essential to a valid waiver, the trial judge must advise the defendant of his right not to testify and of the consequences that attend the waiver of that right before the defendant takes the stand.

■ An advisement and determination of the type argued for by Mozee has value, for it "helps assure that the waiver is effective and facilitates meaningful appellate review without significantly impeding trial court proceedings."[5] *People v. Curtis,* 681 P.2d at 511–12. We conclude, however, that the absence of such an on-the-record advisement and determination of waiver before the defendant testifies will not automatically render a defendant's waiver invalid. If, whenever the defendant calls into question the validity of the waiver of the privilege against self-incrimination, the court can determine that the waiver was in fact voluntarily, knowingly and intelligently made, the absence of an on-the-record advisement prior to the waiver will not be an obstacle to the finding of a valid waiver.

■ Several considerations influence our decision to reach a conclusion that contrasts with the requirement imposed in *Curtis* of a mandatory advisement of the right to testify whenever a defendant chooses to remain silent. First, the need for an advisement when a defendant expresses the intention to testify is lessened in part by the fact that the court is already required to advise the defendant, at the defendant's first appearance, of the constitutional right to remain silent. The court has a duty at that time to make sure that the defendant understands the right. Crim.P. 5(a)(1) and (2)(I); *see People v. Derrera,* 667 P.2d 1363, 1370 (Colo.1983). It is also possible, even likely, that any particular defendant has received one or more such advisements from law enforcement officials during the course of a criminal investigation. *See generally Miranda v. Arizona.* These advisements stand in contrast to the situation involved in *People v. Curtis,* for a defendant is unlikely to receive any pre-trial judicial advisement of his constitutional right to testify, or of the critically important fact that the ultimate decision whether to testify must be made by him and not his counsel.

■ It is true that in any of these pre-trial advisements concerning the right to remain silent, the defendant likely does not receive a full explanation of the many attributes of that right. It is a duty of a defense counsel, however, to ensure that the defendant has been advised of the full array of matters associated with the basic constitutional right to remain silent to the extent that they relate to the defendant's circumstances. This includes the benefits flowing from an exercise of that right at trial and the consequences stemming from a waiver of the right. Here again, we find a contrast with the situation in *Curtis.* Underlying our concern in *Curtis* was the belief, justifiable given the facts in that case,[6] that a defense attorney, acting in a

---

5. A trial judge, however, must be especially sensitive not to suggest by words, tone of voice or demeanor that waiver is or is not a wise course of action when the judge advises the defendant concerning either the waiver of the right to testify or the waiver of the privilege against self-incrimination.

6. Arthur Curtis was convicted by a jury of first degree assault. Curtis did not testify at trial. Immediately before the lunch recess following

good faith and with a zeal to prevent the client's conviction, might overbear a defendant's desire to testify. *People v. Curtis*, 681 P.2d at 508–09, 513, 515. We noted in *Curtis* that a defendant's desire to tell his side of the story may be of overriding importance to him even though, viewed objectively, the defendant's testimony may increase the likelihood of conviction. *Id.* at 513. We also observed in *Curtis* that the opportunity of the defendant to place himself and his own viewpoint before the trier of fact is necessary to legitimate the outcome of the trial. *Id.* at 513–14. Although sensitivity to these factors is required of defense counsel, *see* EC 7–8, Code of Professional Responsibility, we perceive a real risk that without a judicial advisement, the truly personal considerations incident to a defendant's decision not to testify will be unduly minimized by counsel in an effort to assure the best chance of acquittal. For this reason, it is necessary that the trial court intervene to make sure that the defendant understands that he has the right to testify, that he understands the real consequences of deciding to testify or not to testify, and that he and not his counsel is ultimately responsible for the decision as to whether the defendant testifies. *Id.* at 511–15.

Given the independent advisement by the court to the defendant concerning his right to remain silent, and given the practical realities of defense trial strategy, we do not perceive the same level of tension to exist between a defendant and defense counsel when a defendant decides to take the stand as concerned us in *Curtis* when a defendant elects not to testify. We think it is highly unlikely that any defendant testifies only because a defense counsel overrides the defendant's specific desire not to testify. We also think it unlikely that a competent defense counsel would allow a defendant to take the stand without a full explanation of the right to remain silent and the possible consequences of waiving that right. We also view as most improbable the notion that any defendant expects to be able to testify without being subject to cross-examination. Thus, we see less need for intervention by the trial court and an on-the-record advisement concerning these matters before the defendant testifies.[7] Contrast this case with *Miranda v. Arizona*, 384 U.S. at 467–68, 86 S.Ct. at 1624 (advisement required before custodial interrogation in order to protect exercise of privilege against self-incrimination from being overwhelmed by the compelling pressures inherent in a custodial setting).

For these reasons, we conclude that the absence of an advisement to Mozee by the trial court of the right not to testify does not automatically render his waiver invalid or require, in and of itself, that a new trial be granted. Mozee does not otherwise contest the validity of his waiver.[8]

---

the presentation of the defendant's case, Curtis' trial lawyer told the trial judge that Curtis would not testify and that the defense rested. Curtis did not speak, and the trial court did not inquire further. Curtis raised the issue of effective waiver of his right to testify in a motion for a new trial. At a hearing held on the motion, "Curtis' trial lawyer recalled that after hearing the prosecution's case he had decided that Curtis would not testify, and told him so. Curtis did not respond. The lawyer never advised Curtis that whether to testify was Curtis' decision." *People v. Curtis*, 681 P.2d at 508. Curtis testified at the hearing on the motion for a new trial that "he did not realize that he could override his trial lawyer's decision" and that "if he had known that the decision was his, he would have testified regarding his alibi." *Id.*

**7.** If a defendant has chosen self-representation at trial, the trial court may be under an obli-

gation, depending on the circumstances, to take extra steps to ensure that the defendant is fully aware of the constitutional right to remain silent and the consequences for either exercising or forgoing that right.

**8.** In his brief in this court, Mozee primarily argues that a new trial is warranted because of the failure on the part of the trial court to advise Mozee of his right not to testify, as discussed in the text. At the conclusion of his argument, however, Mozee also contends, for the first time, that a new trial is required because Mozee called into question the validity of his waiver in the motion for new trial and the prosecution "failed to establish a *prima facie* case of voluntary, knowing and intentional waiver." In *Curtis* we stated that the burden of proof is on the prosecution to show the effective waiver of the right to testify, and that only if the

Thus, we find no error by the trial court on this issue.

### III.

Mozee challenges his sentence beyond the presumptive range for first degree assault on the basis that the crime of violence statute, upon which that increased sentence was based, is unconstitutional as applied to increase the sentence for first degree assault. Specifically, he argues that the crime of violence statute obliterates any meaningful distinction between first degree assault and second degree assault when the statute is applied to those crimes. For this reason, he contends, his sentence beyond the presumptive range for first degree assault violates the constitutional guarantees of equal protection of the laws.

 Equal protection of the laws is guaranteed by the fourteenth amendment to the United States Constitution and by the due process clause in article II, section 25, of the Colorado Constitution. Equal protection of the laws assures like treatment of all those who are similarly situated. *People v. Calvaresi*, 188 Colo. 277, 281, 534 P.2d 316, 318 (1975). When two

criminal statutes prescribe different penalties for identical conduct, a defendant convicted and sentenced under the harsher statute is denied equal protection of the laws. *People v. Haymaker*, 716 P.2d 110, 115 (Colo.1986); *People v. Mumaugh*, 644 P.2d 299, 301 (Colo.1982); *People v. Marcy*, 628 P.2d 69, 74–75 (Colo.1981); *People v. Calvaresi*, 188 Colo. at 282, 534 P.2d at 318. Statutory classifications of crimes must be based on differences that are real in fact and reasonably related to the purposes of the legislative enactments. *People v. Haymaker*, 716 P.2d at 118; *People v. Wilhelm*, 676 P.2d 702, 704 (Colo.1984). However, the general assembly may establish more severe penalties for acts that it believes have graver consequences, even if the differences are only a matter of degree. *People v. Haymaker*, 716 P.2d at 118; *People v. Thatcher*, 638 P.2d 760, 766 (Colo. 1981). "We have repeatedly affirmed that '[t]he General Assembly [is] free to prescribe different punishments for conduct it may have rationally perceived to have different degrees of social reprehensibility.' " *Id.* (quoting *People v. Johnson*, 195 Colo. 350, 353, 578 P.2d 226, 228 (1978)).

prosecution presents a *prima facie* case of validity must the defendant present evidence showing that the waiver was not valid. *People v. Curtis*, 681 P.2d at 515 n. 16. Mozee argues that a similar burden of proof should be imposed in the present context and then argues for a new trial because the prosecution presented no evidence at the hearing on the motion for a new trial showing that Mozee's waiver of the right *not* to testify was valid. Mozee also notes that the trial court made certain remarks during the hearing on the motion for new trial indicating that a defendant has the burden to put forth evidence showing that a waiver was not valid before the prosecution has any obligation to present evidence that the waiver was valid.

However, it is irrelevant that the prosecution did not present any evidence and that the trial court made these remarks. Mozee did not allege that his waiver of the right not to testify was not voluntarily, knowingly and intelligently made. Rather, his only challenge was the "reverse *Curtis*" allegation—the failure of the court to advise him of his right not to testify automatically invalidated his waiver. The trial court correctly denied that claim as a matter of law. Under these circumstances, the prosecution had no obligation to present evidence to establish

the factual validity of the waiver, and a new trial is not warranted on these grounds.

Thus, we are not called upon to approve or disapprove the trial court's view that the defendant has an obligation to present credible evidence of an invalid waiver before the prosecution has any obligation to present evidence to satisfy its burden of proving a valid waiver. We do note, however, an obvious distinction between a *Curtis* situation and the present circumstances. Given the requirement imposed in *Curtis* of an on-the-record advisement and determination of waiver at the time a defendant chooses not to testify, the prosecution will have a fund of evidence at its disposal from which to present proof of a valid waiver. Given our contrary ruling here, the prosecution may be unable to obtain access to the necessary information concerning the waiver, that is, the information given by the defense counsel to the defendant concerning the defendant's right as well as the circumstances surrounding the decision to testify. In that case, principles of fairness may dictate that the defendant must present credible evidence of an invalid waiver before the prosecution is required to present evidence to carry its burden of establishing a valid waiver.

Mozee's argument proceeds as follows. Mozee was convicted of first degree assault under section 18–3–202(1)(a), 8 C.R.S. (1978). This statute provides that a person commits the crime of assault in the first degree if "[w]ith intent to cause serious bodily injury to another person, he causes serious bodily injury to any person by means of a deadly weapon." With one exception not relevant here, first degree assault is a class 3 felony. § 18–3–202(2)(b), 8 C.R.S. (1985 Supp.). On the date Mozee committed the offense, the presumptive penalty range for a class 3 felony was from four to eight years imprisonment plus one year of parole. § 18–1–105(1)(a)(I), 8 C.R.S. (1985 Supp.).[9]

One form of second degree assault is defined in section 18–3–203(1)(a), 8 C.R.S. (1978). That statute provides that a person commits the crime of assault in the second degree if "[w]ith intent to cause serious bodily injury to another person, he does cause such injury to any person." With one exception not relevant here, second degree assault is a class 4 felony. § 18–3–203(2)(b), 8 C.R.S. (1985 Supp.). At the time of the shooting incident involved here, the presumptive penalty range for a class 4 felony was from two to four years imprisonment plus one year of parole. § 18–1–105(1)(a)(I), 8 C.R.S. (1985 Supp.).[10]

The only distinction between these two types of assault is that first degree assault requires the use of a deadly weapon in causing the serious bodily injury to the victim. *See People v. Martinez*, 189 Colo. 408, 410–11, 540 P.2d 1091, 1093–94 (1975). Mozee does not dispute that this is a reasonable distinction for the legislature to make and justifies the disparity in the penalties imposed.

The constitutional problem arises when the possible sentences are increased by the application of the crime of violence statute. That statute mandates a sentence greater than the maximum in the presumptive range for certain crimes, but not more than twice the maximum term, if those crimes are performed in such a manner as to make them "crimes of violence." § 16–11–309(1)(a), 8 C.R.S. (1985 Supp.). "Crime of violence" is defined, as is relevant for this appeal, as

a crime in which the defendant used, or possessed and threatened the use of, a deadly weapon during the commission ... of a crime of ... first or second degree assault.

§ 16–11–309(2)(a)(I), 8 C.R.S. (1985 Supp.). We have characterized the crime of violence statute as a sentencing provision associated with the underlying crime and not as a separate and distinct offense. *People v. Haymaker*, 716 P.2d at 116–117; *People v. Eggers*, 196 Colo. 349, 351, 585 P.2d 284, 286 (1978); *Brown v. District Court*, 194 Colo. 45, 47, 569 P.2d 1390, 1391 (1977).

According to Mozee's argument, a person who intends to cause and does cause serious bodily injury to a victim by means of a deadly weapon—the conduct Mozee engaged in as found by the jury—could be

9. The presumptive penalty range for class 3 felonies described in the text applies to felonies committed after July 1, 1979, but before July 1, 1984. § 18–1–105(1)(a)(I), 8 C.R.S. (1985 Supp.). For any class 3 felony committed on or after July 1, 1984, but before July 1, 1985, the presumptive range of punishment is simply four to eight years imprisonment. § 18–1–105(1)(a)(II), 8 C.R.S. (1985 Supp.). For any class 3 felony committed on or after July 1, 1985, the presumptive range of punishment is four to sixteen years imprisonment, and the district court has the discretion to impose a fine of not less than $3,000 and not more than $750,000 in addition to or in lieu of a sentence of imprisonment. § 18–1–105(1)(a)(III) and (IV), 8 C.R.S. (1985 Supp.).

10. The presumptive penalty range for class 4 felonies described in the text applies to felonies committed after July 1, 1979, but before July 1, 1984. § 18–1–105(1)(a)(I), 8 C.R.S. (1985 Supp.). For any class 4 felony committed on or after July 1, 1984, but before July 1, 1985, the presumptive range of punishment is simply two to four years imprisonment. § 18–1–105(1)(a)(II), 8 C.R.S. (1985 Supp.). For any class 4 felony committed on or after July 1, 1985, the presumptive range of punishment is two to eight years imprisonment, and the district court has the discretion to impose a fine of not less than $2,000 and not more than $500,000 in addition to or in lieu of a sentence of imprisonment. § 18–1–105(1)(a)(III) and (IV), 8 C.R.S. (1985 Supp.).

charged and convicted of either second degree assault and a crime of violence or of first degree assault and a crime of violence under the statutory terms described above. The possible penalties are significantly different—eight to sixteen years for first degree assault and four to eight years for second degree assault—but the offenses proved, according to Mozee, consist of the identical elements of intent, use of a deadly weapon, and serious bodily injury. For this reason, Mozee argues, the imposition of disparate penalties is not constitutionally permissible.

In their brief, the People offered nothing that directly rebutted Mozee's constitutional challenge to the statutory scheme as articulated above. At oral argument, however, the People argued for a distinction between the two offenses founded upon a contention that while the use of a deadly weapon is an element of a crime of violence finding in this context, it need not be shown that the use of the deadly weapon caused serious bodily injury in order to secure a valid crime of violence finding. Thus, a possible distinction remains between first degree assault and second degree assault when each is found to be a crime of violence, for the former offense requires the additional element that the use of the deadly weapon caused the serious bodily injury.

A hypothetical set of facts may be of help in explaining the People's position. A person who shoots another person and causes serious bodily injury could be convicted of first degree assault and crime of violence. A person who shoots at but misses another person and then, for various imaginable reasons, does not use the gun further and beats the victim with a fist, causing serious bodily injury, could be convicted of second degree assault and crime of violence but not of first degree assault and crime of violence. In the latter scenario, according to the People's argument, the deadly weapon is "used" "during the commission" of the offense, yet the use of the weapon does not cause serious bodily inju-

ry and cannot be the basis for a first degree assault conviction. Thus, an element of causation linking the deadly weapon to the serious bodily injury distinguishes first degree assault and crime of violence from second degree assault and crime of violence. The People argue that this distinction justifies the disparity in punishment.

Even though the distinction is subtle, we find the People's argument to be persuasive. Clearly, the legislature intended that an offender must do something more with a deadly weapon than merely have it in his possession in order to sustain a crime of violence finding. However, if the weapon was used in some fashion during the criminal episode resulting in the underlying offense, we do not believe the legislature intended to preclude a crime of violence finding simply because the use of the deadly weapon did not lead directly to an injury essential to the underlying offense. The hypothetical discussed above illustrates the reality of the distinction. Thus, in order to prove first degree assault and crime of violence instead of second degree assault and crime of violence, the People must prove an additional element—that the use of the deadly weapon actually caused the serious bodily injury.

The difference justifies the disparate penalties established by the general assembly. The legislature rationally could perceive that the mere use of a weapon in some manner during the commission of a specific offense justifies an increased penalty. The crime of violence statute accomplishes that result. Even when a crime of violence finding is superimposed on both first and second degree assault convictions, however, the real distinction between those two crimes remains—first degree assault requires that serious bodily injury be caused *by means of* the deadly weapon, but second degree assault does not. For this reason, we conclude that Mozee's conviction of and sentencing for first degree assault and a crime of violence does not vio-

late the guaranty of equal protection of the laws.[11]

## IV.

Finally, Mozee argues that the trial court gave the jury an improper instruction concerning the crime of violence charge, and made the same error in the corresponding verdict form signed by the jury. Mozee did not object to the instruction or the verdict form in the trial court.

As discussed in the previous section, a "crime of violence" is defined, in relevant part, as a crime "in which the defendant used, or possessed *and* threatened the use of, a deadly weapon during the commission or attempted commission of ... first or second degree assault." § 16–11–309(2)(a)(I), 8 C.R.S. (1985 Supp.) (emphasis added). On its face, the statute requires that the defendant actually use or threaten the use of a deadly weapon in the commission of the underlying crime in order to be subject to the increased sentence mandated by the statute.

■ Here, the relevant instruction given to the jury by the trial court provided that the crime of violence charge was established if the People proved that the defendant "used or possessed *or* threatened the use of a deadly weapon" in the commission of the crime of first degree assault. (Emphasis added.) The verdict form signed by the jury contained the same disjunctive language. It is entirely possible to read the instruction and the verdict form as permitting the jury to find the defendant guilty of a crime of violence if the prosecution merely proved that the defendant "possessed" a deadly weapon during the commission of the underlying crime, rather than requiring the prosecution to prove that the defendant used or threatened to use that weapon. Therefore, the trial court erred in giving this instruction and in utilizing the corresponding verdict form.

■ However, these errors must be disregarded for we conclude that they did not affect any substantial rights of Mozee and therefore were harmless. Crim.P. 52. The defendant acknowledged that he shot the victim with the handgun, a deadly weapon. The only issue disputed by the defendant at trial was whether the shooting was accidental, an issue resolved against the defendant by the jury when it found the defendant guilty of first degree assault. On this record, there can be no doubt that a deadly weapon was actually used in the commission of the offense. Therefore, there is no reason to reverse the jury verdict on the crime of violence issue even though the court improperly instructed the jury and the verdict form contained the same defect.

The judgment of the district court is affirmed.

ERICKSON, J., specially concurs and VOLLACK, J., joins in the special concurrence.

ROVIRA, J., specially concurs.

ERICKSON, Justice, specially concurring in the result:

Although I agree with the conclusion reached by the majority that the conviction should be affirmed, I disagree with the analysis in part II of the opinion. I specially concurred in *People v. Curtis*, 681 P.2d

---

**11.** Recently, in *People v. Haymaker*, 716 P.2d 110 (Colo.1986), we held that the fact that the use of a deadly weapon raised first degree sexual assault from a class 3 felony to a class 2 felony and also provided the basis for an increased sentence under the crime of violence statute did not, in and of itself, work a denial of equal protection of the laws or violate constitutional guarantees against double jeopardy. *Id.* at 114–19. We then applied our holding in *Haymaker* to dispose of similar challenges in *People v. Powell*, 716 P.2d 1096, 1104–05 (Colo. 1986); *People v. Vigil*, 718 P.2d 496, 506 (Colo. 1986); and *People v. Sanders*, 717 P.2d 948 (Colo.1986) (per curiam). Although our holding in *Haymaker* concerned only first degree sexual assault, it has obvious implications for the similar workings of the first degree assault statute. However, *Haymaker* did not analyze a constitutional challenge based on the relationship *between* two different offenses when *both* are supplemented by crime of violence findings, as is the challenge here. Thus, *Haymaker* does not relate to or dispose of the issue presented in this case.

504 (Colo.1984), and took exception to the court's elevation of the defendant's right to testify under the sixth amendment of the United States Constitution to the level of a fundamental right. Justice Rovira joined my special concurrence.

In this case, the majority has focused on the fifth amendment right against self-incrimination and has again categorized the right as a fundamental right, buttressing the opinion with a reference to article II, section 18 of the Colorado Constitution, which parallels the federal guarantee of the privilege against self-incrimination. The majority cites no authority to support its holding that the defendant's right not to take the stand is a fundamental constitutional right. The court states only that it can "see no principled basis" for viewing the right against self-incrimination differently from the right to testify in one's own defense that was analyzed in *Curtis*. Majority op. at 123. Yet the majority goes on to distinguish the two situations in determining what advisement requirements to impose on the trial court.

The history of a defendant's right to testify on his own behalf in a criminal case was capsulated in footnote 7 of the majority opinion in *People v. Curtis*, 681 P.2d at 510–511. The importance of the defendant's right to testify in defense of the charges that have been made against him cannot be over-emphasized. Regardless of what instructions are given to the jury, the defendant's election to testify or to remain silent is of great significance to the jury. M. Freedman, *Professional Responsibility of the Criminal Defense Lawyer: The Three Hardest Questions*, 64 Mich.L.Rev. 1469 (1966); *see also Nix v. Whiteside*, — U.S. —, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986). Any defense lawyer that does not review in depth the advantages and disadvantages of the defendant testifying on his own behalf is derelict in his duty to his client. The American Bar Association Standards for Criminal Justice provide:

(a) Certain decisions relating to the conduct of the case are ultimately for the accused and others are ultimately for the defense counsel. The decisions which are to be made by the accused after full consultation with counsel are:

(i) what plea to enter;

(ii) whether to waive jury trial; and

(iii) whether to testify in his or her own behalf.

Standards for Criminal Justice § 4–5.2(A) (1979).

In determining whether the defendant should testify, defense counsel "should give his client the benefit of his advice and experience, but the ultimate decision must be made by the defendant and the defendant alone." Levy, *Some Comments on the Trial of a Criminal Case*, 10 Rec.Assn.B. City N.Y., 203, 213 (1955); *accord*, Steinberg & Paulsen, *A Conversation with Defense Counsel on Problems of a Criminal Defense*, 7 Prac. Law. 25, 37 (May 1961).

In my view, the majority in *People v. Curtis* assumed that defense counsel would not advise the defendant of his right to testify. *Curtis* in effect forces the trial judge to impose his presence and advice on sixth amendment issues, even when a defendant has competent defense counsel. In this case, the court establishes the same requirement as to the waiver of the right against self-incrimination. In my view, this requirement is unjustified and effectively creates an open season in post-conviction proceedings on lawyers and trial judges who have not followed the new ritual.

It is fundamental that a defendant in a criminal case who takes the witness stand will be treated as all other witnesses when cross-examined and will be subject to impeachment if he has been convicted of a felony. I believe that the extension of our holding in *Curtis* to the fifth amendment right against self-incrimination and its Colorado counterpart imposes requirements on the trial judge that fall within the responsibilities of defense counsel. Defense counsel is a trained advocate who is obligated to protect the defendant's constitutional rights and to insure that defendant receives a fair trial. He cannot, except in very limited instances, disclose confidential

communications with his client to anyone. Privileged communications with a client are sacrosanct and would be jeopardized by the requirement that the court now creates. If the rights set forth in the majority opinion are to be guaranteed to the defendant, the assertion of those rights in a post-conviction proceeding should fall upon the defendant, and he should have the burden of proof to establish alleged violations of those rights.

I also have serious reservations about footnote 5 of the majority opinion, which requires the trial judge to be cautious about his words, tone of voice, and demeanor in advising the defendant about the issue of waiver when he elects to testify. In my view, we are creating unnecessary additional rules and grounds for post-conviction proceedings that only insure that litigation will never end once the defendant has been convicted. The defendant is advised of his rights against self-incrimination pursuant to Crim.P. 5 at his first appearance in court. *People v. Heintze*, 200 Colo. 248, 614 P.2d 367 (Colo.1983). In my opinion, the new procedure announced by the majority erodes the attorney-client relationship by establishing that the court does not trust the defense lawyer to carry out his professional duties.

I am authorized to say that VOLLACK, J., joins me in this special concurrence.

ROVIRA, Justice, specially concurring in the result:

I agree with the conclusion reached by the majority that the defendant's conviction should be affirmed. I also agree that there is no violation of the defendant's constitutional right not to incriminate himself because the trial court did not advise him of his right not to testify. To the extent that the majority opinion relies on and reinforces the analysis of *People v. Curtis*, 681 P.2d 504 (Colo.1984), I disagree with the views expressed in the majority opinion.

In addition, I disagree with the basic underlying thesis of the majority opinion; that is, "by choosing to testify, Mozee waived an important constitutional right."

Majority op. at 123. In my view, by choosing to testify, Mozee exercised a constitutional right. The constitutional right not to testify and the privilege against self-incrimination protects a person from being involuntarily called as a witness against himself or being required to answer questions that might incriminate him.

Here, the prosecution made no attempt to call the defendant as a witness. Neither the fifth amendment to the United States Constitution nor section 18 of article II of the Colorado Constitution is implicated. The majority's analysis is flawed by its failure to recognize this simple fact. The extended discussion on the rights of a defendant who testifies on his own behalf is not warranted.