12 P.3d 1233

STATE of Hawai'i, Respondent–Appellee,

v.

Sky LEWIS, Petitioner–Appellant.

No. 22901.

Supreme Court of Hawai'i.

Nov. 28, 2000.

Mimi Desjardins, on the application, for petitioner-appellant.

MOON, C.J., LEVINSON, NAKAYAMA, RAMIL, and ACOBA, JJ.

Opinion of the Court by ACOBA, J.

We affirm the result reached by a majority of the Intermediate Court of Appeals (the ICA), 94 Hawai'i 309, 12 P.3d 1250, affirming the September 14, 1999 judgment of probation filed by the family court of the second circuit (the court), against Petitioner–Appellant Sky Lewis (Petitioner). However, we granted Petitioner's application for writ of certiorari to clarify the applicability of the colloquy requirement detailed in footnote 7 of *Tachibana v. State*, 79 Hawai'i 226, 900 P.2d 1293 (1995), and the suggested prior-to-start-of-trial advisement highlighted in footnote 9 of that case, to a defendant who exercises his or her right to testify at trial.

I.

In *Tachibana*, the circuit court had granted a petition for post-conviction relief on the ground that Tachibana's attorney had "prevented [him] from testifying in his own behalf in violation of Tachibana's constitutional right to testify[.]" *Id.* at 230, 900 P.2d at 1297. On appeal, a majority of this court confirmed that a defendant's right to testify was constitutionally guaranteed and a necessary corollary of the right against self-incrimination:

"A defendant's right to testify in his or her own defense is guaranteed by the constitutions of the United States and Hawai'i and by a Hawai'i statute.

. . . .

[T]he opportunity to testify is also a necessary corollary to the Fifth Amendment's guarantee against compelled testimony, since every criminal defendant is privileged to testify in his or her own defense, or to refuse to do so."

*Id.* at 231, 900 P.2d at 1298 (quoting *State v. Silva*, 78 Hawai'i 115, 122–23, 890 P.2d 702, 709–10 (App.1995) (citations, quotation marks, footnote, and emphases omitted)) (brackets omitted). The majority recognized that a defendant's constitutional right to testify was a personal one, the decision to testify "is ultimately committed to a defendant's own discretion," *Silva*, 78 Hawai'i at 124, 890 P.2d at 711, and, thus, the right "may be relinquished only by the defendant." *Id.* at 123, 890 P.2d at 710 (internal quotation marks and citation omitted); *Tachibana*, 79 Hawai'i at 232, 900 P.2d at 1299.

To protect each defendant's personal right to testify while maintaining the integrity of the criminal justice system, the majority adopted "the colloquy approach," in which, " 'if the defense rests without calling the defendant, the trial judge, as a matter of routine, conducts an inquiry outside the jury's presence' " " 'with the defendant to ensure that she or he has knowingly waived her or his right to testify.' " *Id.* at 233, 900 P.2d at 1300 (quoting *Boyd v. United States*, 586 A.2d 670, 675 (D.C.App.1991)) (brackets omitted). Accordingly, *Tachibana* held that, "in order to protect the right to testify under the Hawai'i Constitution, trial courts must advise criminal defendants of their right to testify and must obtain an on-the-record waiver of that right in every case in which the defendant does not testify." [1] *Id.* at 236, 900 P.2d at 1303 (footnotes omitted). Footnote 7 to the foregoing passage described the "ultimate colloquy," *id.* at 237 n. 9, 900 P.2d at 1304 n. 9, to be engaged in by the trial courts:

"In conducting the colloquy, the trial court must be careful not to influence the defendant's decision whether or not to tes-

1. A majority of this court observed that "the ideal time to conduct the colloquy is immediately prior to the close of the defendant's case[,]" *Tachibana*, 79 Hawai'i at 237, 900 P.2d at 1304, but a colloquy conducted thereafter would not result in reversible. error in the absence of a showing of actual prejudice. *Id.*

tify and should limit the colloquy to advising the defendant that he or she has a right to testify, that if he or she wants to testify that no one can prevent him or her from doing so, and that if he or she testifies the prosecution will be allowed to cross-examine him or her. In connection with the privilege against self-incrimination, the defendant should also be advised that he or she has a right not to testify and that if he or she does not testify then the jury can be instructed about that right." *State v. Neuman*, 179 W.Va. 580, 585, 371 S.E.2d 77, 82 (1988) (quoting *People v. Curtis*, 681 P.2d [504,] 514 [ (Colo.1984) ]. *Id.* at 236 n. 7, 900 P.2d at 1303 n. 7 (brackets omitted). In footnote 9 of *Tachibana*, this court indicated "it ... behoove[d]" trial courts to notify a defendant "prior to the start of trial" that a defendant had the right to testify and the right not to testify. *Id.* at 237 n. 9, 900 P.2d at 1303 n. 9.

## II.

In the instant case, Petitioner testified at his jury-waived trial on the charge of abuse of a family or household member, Hawai'i Revised Statutes § 709–906 (Supp.1999). Neither the start-of-trial advisement set out in footnote 9 nor the colloquy described in footnote 7 took place. On September 14, 1999, Petitioner was found guilty as charged. A judgment of probation was filed on that day. On October 12, 1999, Petitioner filed a notice of appeal. On appeal, he complained of plain error premised on the court's failure, prior to his testimony, to engage him in an on-the-record colloquy referred to in *Tachibana*. Relying on footnote 7 of *Tachibana*, Petitioner maintained that the court was required to obtain a waiver of his right against self-incrimination prior to his testimony.

On appeal, 94 Hawai'i 309, 12 P.3d 1250, the ICA majority (Chief Judge Burns,. joined by Judge Watanabe) decided that the *Tachibana* colloquy was not required in "pre-testimony" situations because "[t]he words 'should also be advised,' " in reference to the "right not to testify" in footnote 7 "do not mandate a colloquy ... in light of the use of the [contrasting] words 'must conduct a colloquy' " used in reference to the "right to testify." *State v. Lewis*, at 313, 12 P.3d at 1254 (App.2000) [hereinafter, the "ICA's majority opinion"]. For further support, the ICA majority maintained the words "any inadvertent effect," as they applied to the "right not to testify" in footnote 9, "implies a significantly lesser concern for the defendant's right to testify." *Id.* Noting that Petitioner "has not stated how his testimony harmed his case and there is no indication in the record that it was harmful to his case," *id.* at 313, 12 P.3d at 1254, the ICA majority concluded that "the record shows a harmless error rather than a plain error." *Id.* In his dissent, Judge Lim stated that he "would require a '*Tachibana* colloquy' where the defendant chooses to testify, as well as where the defendant chooses not to testify[,]" dissenting opinion at 314, 12 P.3d at 1255, because there is "no real way of knowing the result had [Petitioner] chosen to remain silent as a result of a personal colloquy[.]" *Id.* at 314, 12 P.3d at 1255.

■ In his application, Petitioner asserts that the ICA majority "appears to concede, on the one hand, that some error took place when the trial court failed to conduct the on-the-record colloquy even though the ICA clearly held the colloquy was not required[,]" leaving it "impossible to tell from the Opinion whether, as a matter of law, failure to conduct a pre-testimony (and hence discretionary according to the ICA) colloquy will constitute error or not."[2]

■ We hold that *Tachibana* does not require the "colloquy" described in footnote 7 in the situation where a defendant has decided to testify; thus, no error was committed by the court in not engaging Petitioner in that dialogue prior to his testimony. Accordingly, *a fortiori*, there was no plain error and no occasion to apply the doctrine of harmless error. We acknowledge that the prior-to-start-of-trial advisement referred to in footnote 9 was not mandated by *Tachibana* but conclude now that it should be, to minimize the scope of any post-conviction claim by a testifying defendant that he or she was not aware of his or her right not to testify.

2. We recognize that because the decisions of the ICA are subject to review upon the granting of certiorari, the ICA may set forth alternative bases to support a decision.

### III.

In adopting the colloquy approach in *Tachibana*, this court's majority rejected both the "demand" rule, under which " 'a defendant who fails to complain about the right to testify during trial is conclusively presumed to have waived that right[,]' " 79 Hawai'i at 233, 900 P.2d at 1300 (quoting *Boyd*, 586 A.2d at 676), and the post-trial challenge approach where " 'a trial judge need not *sua sponte* question the defendant during the trial, but the defendant is free to bring a post-conviction challenge based on a denial of the right to testify.' " *Id.* (quoting *Boyd*, 586 A.2d at 677). Of significance in the rejection of the post-conviction approach was the majority's concern that the determination of "whether a particular defendant actually waived his or her right to testify based on evidence presented in a post-conviction proceeding can be an almost impossible task." *Id.* at 234, 900 P.2d at 1301. Thus, it was pointed out that an advantage of the colloquy approach was that "a trial judge would establish a record that would effectively settle the right-to-testify issues in the case, and thereby relieve the trial judge [and the appellate court] of extended post-conviction proceedings." *Id.* The risk that in " 'advising the defendant of his or her right *to* testify, the court could influence the defendant to waive his or her right *not to* testify, thus threatening the exercise of this other, converse, constitutionally explicit and more fragile right[,]' " was acknowledged. *Id.* at 235, 900 P.2d at 1302 (quoting *United States v. Martinez*, 883 F.2d 750, 760 (9th Cir.1989), *vacated on other grounds*, 928 F.2d 1470 (9th Cir.), *cert. denied*, 501 U.S. 1249, 111 S.Ct. 2886, 115 L.Ed.2d 1052 (1991) (citation and quotation marks omitted) (emphases in original)) (brackets omitted). However, that risk was perceived as minimal because " '[a]n adequate inquiry would remind the defendant that he or she ha[d] the constitutional right to remain silent[.]' " *Id.* (quoting *Martinez*, 883 F.2d at 767 (Reinhardt, J., dissenting) (footnote omitted)) (brackets omitted).

By establishing the colloquy, then, the majority sought to preclude the circumstances in *Tachibana* that gave rise to the post-conviction claim that the constitutional right to testify had been in some way usurped. Hence, the *Tachibana* colloquy was the product of two objectives: (1) the protection of a defendant's personal right to testify; and (2) the minimization of post-conviction disputes over the actual waiver of the right to testify. Where, as here, the Petitioner has exercised his right to testify, neither one of the *Tachibana* concerns arises. By testifying, Petitioner realized his constitutional and statutory right to testify in his own defense. *Silva*, 78 Hawai'i at 123, 890 P.2d at 710. When he did so, the question of whether he waived the right was removed from any future post-conviction proceeding.

■ In light of the foregoing considerations, the colloquy requirement to "advise[ ] [a defendant] that he [or she] has a right not to testify," *Boyd*, 586 A.2d at 679 n. 15, does not impose an affirmative duty on the trial courts in all cases to engage the defendant in the colloquy. In *Tachibana*, the colloquy was adopted "in order to protect the *right to testify*," and the trial courts were instructed to "advise criminal defendants of their right *to testify*," and to "obtain . . . a waiver of that right *in every case in which the defendant does not testify*." 79 Hawai'i at 236, 900 P.2d at 1303 (emphases added). Hence, the colloquy is required only in cases "in which the defendant does not testify."

On the other hand, notification of the defendant's right not to testify in the *Tachibana* colloquy was intended to maintain the even balance of the trial court's statement to the defendant, so as to avoid the risk previously alluded to, that is, " 'by advising the defendant of his or her right to testify, the court could influence the defendant to waive his or her right not to testify[.]' " *Id.* at 235, 900 P.2d at 1302 (quoting *Martinez*, 883 F.2d at 760 (citation, quotation marks, and emphases omitted)) (brackets omitted). As indicated, the majority adopted the view that any "marginal effect" on the exercise of the "fifth amendment privilege" from the inquiry as to Petitioner's right to testify would not be of any "particular cause for concern" because "[a]n adequate inquiry would remind the defendant [of] . . . the constitutional right to remain silent." *Id.* at 235, 900 P.2d at 1302 (internal quotation marks and citation omitted).

In sum, the concerns with respect to a post-conviction claim that a defendant was not advised of the right not to testify before testifying were seen as being of only "marginal" or lesser significance than a claim that a defendant was precluded from testifying. Thus, no waiver procedure was established for such an occurrence. *Tachibana*, then, left the disposition of such claims to proceedings ordinarily assigned to post-conviction challenges, as opposed to " 'addressing the issue up front,' " 79 Hawai'i at 234, 900 P.2d at 1301 (quoting *Gill v. State*, 632 So.2d 660, 663 (Fla.1994), *disapproved on other grounds by Oisorio v. State*, 676 So.2d 1363 (Fla. 1996)), through trial court inquiries.

## IV.

We see no reason to adopt a collateral *Tachibana* colloquy for instances where a defendant chooses to testify. It has been suggested that while the procedural safeguard of a waiver proceeding is required where a defendant does not testify, a similar proceeding is unnecessary if a defendant chooses to testify because of the likelihood that (1) the defendant has received "one or more such advisements from law enforcement officials during the course of a criminal investigation," *People v. Mozee*, 723 P.2d 117, 124 (Colo.1986), (2) defense counsel would not "allow a defendant to take the stand without a full explanation of the right to remain silent and the possible consequences of waiving that right[,]" *id.* at 125, and (3) any defendant who testifies would expect to be cross-examined. *Id.* at 130.[3]

We concur that when a defendant takes the stand to present his or her own defense, the probability is great that the defendant and his or her counsel will have discussed the advantages and risks of testifying, the nature of the defense(s) to be presented during the defendant's testimony, and the subjects upon which the defendant will likely be challenged on cross-examination. Such a discussion must necessarily bring home to a defendant that, by taking the stand, he or she will have waived his or her right not to testify. In light of this greater probability, there is "less need for intervention by the trial court and an on-the-record advisement concerning these matters before the defendant testifies." [4] *Id.*

■ In view of the foregoing, we hold that *Tachibana* does not require that the court engage in the colloquy if the defendant chooses to testify in his or her own behalf. As noted above, the decision to testify ultimately rests in the discretion of the defendant and is one that only the defendant may personally relinquish. Thus, if "a defendant notifies the court of his or her intent to testify, the court should not comment upon the advisability of such a decision." *Silva*, 78 Hawai'i at 124, 890 P.2d at 711. "Indeed, " '[i]f a defendant insists on testifying, no matter how unwise such a decision, the attorney must comply with the request.' " *Id.* at 125, 890 P.2d at 712 (quoting *Ortega v. O'Leary*, 843 F.2d 258, 261 (7th Cir.1988), *cert. denied*, 488 U.S. 841, 109 S.Ct. 110, 102 L.Ed.2d 85 (1988)). That, at the least, was one of the teachings of *Tachibana*.

■ Unlike *Tachibana*, where ineffective assistance of counsel was found by the trial court because counsel had prevented Tachibana from testifying and, thus, had violated his right to testify, there is nothing to indicate here that Petitioner's decision to testify was anything other than voluntarily, knowingly, and intelligently made. Thus, there can be no error premised on any lack of judicial advice, prior to the defendant's testimony, concerning a defendant's right against self-incrimination.

## V.

■ While we hold the court need not engage in a *Tachibana* colloquy except where the defendant has indicated that he or she

---

3. One of the factors relied on in *Mozee* was that the trial court is required to advise the defendant, at his or her first appearance, of the constitutional right to remain silent and ensure that the defendant understands that right, pursuant to Colorado Rules of Criminal Procedure Rules 5(a)(1) and 2(*l*). 723 P.2d at 124. Hawai'i has no equivalent rule.

4. We are not faced with a case where a defendant appears pro se. In such a case, "the trial court may be under an obligation, depending on the circumstances, to take extra steps to ensure that the defendant is fully aware of the constitutional right to remain silent and the consequences for either exercising or forgoing that right." *Mozee*, 723 P.2d at 125 n. 7.

will not testify, we believe there is a salutary effect to be obtained in all cases from a trial court addressing a defendant as suggested in footnote 9. *Tachibana* suggested that this prior-to-trial advisement should be implemented. However, as reflected in this case, not all trial courts are following this advice. Therefore, we now mandate that, in trials beginning after the date of this opinion, such advice shall be imparted by the trial courts to defendants, that is, the trial courts "prior to the start of trial, [shall] (1) inform the defendant of his or her personal right to testify or not to testify and (2) alert the defendant that, if he or she has not testified by the end of the trial, the court will briefly question him or her to ensure that the decision not to testify is the defendant's own decision."[5] 79 Hawai'i at 237 n. 9, 900 P.2d at 1304 n. 9. This will have the beneficial effect of limiting any post-conviction claim that a defendant testified in ignorance of his or her right not to testify. Because we view this prior-to-trial advisement as incidental to the "ultimate colloquy," *id.*, any claim of prejudice resulting from the failure of the trial court to give it must meet the same "actual[ ] prejudice[ ]" standard applied to violations of the colloquy requirement. *Id.* at 237, 900 P.2d at 1304.

## VI.

In conclusion, we affirm the ICA majority's affirmance of Petitioner's September 14, 1999 judgment of probation, but for the reasons set forth herein.

---

**5.** As with the *Tachibana* colloquy, the mandatory prior-to-start-of-trial advisement is applied prospectively to trials beginning after the filing date of this opinion, 79 Hawai'i at 238, 900 P.2d at 1305, thus avoiding any conflicts with decisions of the United States Supreme Court and any "selective" application of the rule to "similarly situated defendants." *Id.* at 238 n. 10, 900 P.2d at 1305 n. 10 (citations omitted).