319 P.3d 1093

**STATE of Hawai'i, Respondent/Plaintiff–Appellee,**

v.

**Henry POMROY, Petitioner/Defendant–Appellant.**

**No. SCWC–29688.**

Supreme Court of Hawai'i.

Jan. 31, 2014.

Steven D. Strauss, Hilo, for petitioner.

Sonja P. McCullen, Honolulu, for respondent.

ACOBA, McKENNA, AND POLLACK, JJ.; with RECKTENWALD, C.J., Dissenting, with whom NAKAYAMA, J., Joins.

Opinion of the Court by McKENNA, J.

## I. Introduction

At issue in this appeal is whether Petitioner/Defendant–Appellant Henry Pomroy ("Pomroy") was adequately informed of his right to testify. Pomroy presents the following questions on certiorari:

A. Whether the Intermediate Court of Appeals determined in error that the district court's failure to advise petitioner prior to start of trial of his right to testify did not warrant reversal of the trial court's judgment of conviction.

B. Whether the Intermediate Court of Appeals determined in error that the district court's *Tachibana* [1] colloquy was not defective and petitioner's waiver of right to testify was valid.

C. Whether the Intermediate Court of Appeals should have rejected the trial court's finding that the testimony of the complaining witness was credible.[2]

We hold that the district court's right-to-testify colloquy was defective. As a result, the district court did not obtain an on-the-record waiver of the right to testify from Pomroy. Pomroy has thus proven a constitutional violation of his right to testify, and under the circumstances of this case, such violation cannot be considered harmless beyond a reasonable doubt. We further hold that the prohibition against double jeopardy does not preclude a retrial in this case, as substantial evidence supported Pomroy's conviction.

## II. Background

### A. Trial

Pomroy was charged by Complaint with "intentionally, knowingly or recklessly caus[ing] bodily injury to another person,

---

1. Referring to *Tachibana v. State*, 79 Hawai'i 226, 236, 900 P.2d 1293, 1303 (1995), which held, "[I]n order to protect the right to testify under the Hawai'i Constitution, trial courts must advise criminal defendants of their right to testify and must obtain an on-the-record waiver of that right in every case in which the defendant does not testify." (Footnotes omitted). This court stated that "the ideal time to conduct the colloquy is immediately prior to the close of the defendant's case." 79 Hawai'i at 237, 900 P.2d at 1304.

2. Although not specifically raised as a question, Pomroy's certiorari application also asserts that the Intermediate Court of Appeals erred in concluding there was substantial evidence to support his conviction. Therefore, we address this issue on certiorari. Based on our decision to vacate the conviction and remand for a new trial, however, we need not and do not address Question C.

CLARK LUKENS, thereby committing the offense of Assault in the Third Degree, in violation of Section 707–712(1)(a), Hawai'i Revised Statutes, as amended." [3] He waived his right to a trial by jury.

At the bench trial,[4] the district court did not conduct a *Tachibana* colloquy with Pomroy prior to the start of trial. The State called as its first witness Clark Lukens, the complaining witness. Lukens testified that he has required the use of crutches since 1987 due to hip dysplasia. Lukens testified that Pomroy was a fellow tenant at the Hale Moana Apartment Complex in Hilo. As to the assault in question, Lukens testified that while he was in the backyard with a landscaper and a board member of the apartment complex, Pomroy approached "screaming," in an "extremely aggravated and aggressive" manner. Pomroy bumped his chest against Lukens and accused Lukens of attempting to have Pomroy evicted from the apartment complex.

The interaction lasted five minutes, then Pomroy left, so Lukens decided to enter the elevator to return to his (Lukens') apartment. Lukens testified that after he entered the empty elevator, Pomroy suddenly appeared and forced himself into the elevator, and the door closed behind him, leaving Lukens alone in the elevator with Pomroy. During the entire ride to the seventh floor, Pomroy, who had pushed Lukens into the corner of the elevator, used his forearms and elbows to strike Lukens about 50 or 60 times in the throat, neck, and shoulders. Lukens recalled Pomroy saying "he [Pomroy] was gonna kick [Lukens'] ass, he was gonna beat the F"n shit outta [Lukens], he was gonna teach [Lukens] manners." When the elevator doors opened on the seventh floor, Pomroy "ceased the attack" and "immediately sprung back off" of Lukens. Lukens' wife was waiting for him at the elevator landing on the seventh floor and helped Lukens out. Lukens testified that he felt pain, which he described as a seven or eight on a ten-point scale, because Pomroy

was a "big guy" who was hitting "with all his might," "trying to hurt [Lukens]," and hitting "[a]s hard as he could." Lukens also testified he had no injuries from that day.

The State then called Lukens' wife, Paulette Berbelis, who testified that she had been waiting outside the elevator on the seventh floor for Lukens after the landscaper had called her to ask if Lukens was okay. Berbelis heard Pomroy screaming and yelling inside the elevator. As the elevator doors opened, Berbelis saw Pomroy "jump away" from Lukens, while Lukens was "pushed against" against the elevator wall. Berbelis observed Pomroy to be "hepped up" or "aggressive," while Lukens appeared "[s]haken up quite a bit." Lukens complained to her of pain in his chest and neck.

The State then called landscaper Robert Robbins, who testified that Pomroy had been upset and yelling in the backyard about people cutting down trees. Lukens then approached Robbins and Pomroy and told Pomroy to leave Robbins alone. At that point, Pomroy and Lukens continued their conversation, with Pomroy still angry, and Lukens keeping his distance. Robbins then saw both head toward the foyer (where the elevator is located) and heard "excessive banging" coming from the elevator shaft, which he thought was "[n]othing human. Just mechanical."

The State then called Hawai'i County Police Department police officer Jeremy Kubojiri, who testified that he interviewed Lukens after the altercation. Kubojiri said Lukens was "shaken up" and complaining of pain in his chest. Kubojiri observed no "visible injuries" to Lukens, and Lukens refused medical assistance.

The State then called Hawai'i County Police Department police officer Malia Bohol, who testified that she interviewed Pomroy after the altercation. Bohol testified that Pomroy told her that both he and Lukens approached Robbins, who was cutting down a tree with a chainsaw and leaving the debris in a pond. Lukens was yelling at an un-

---

**3.** Hawai'i Revised Statutes ("HRS") 707–712(1)(a) (1993) provides, "A person commits the offense of assault in the third degree if the person ... [i]ntentionally, knowingly, or recklessly causes bodily injury to another person...." HRS

§ 707–700 (1993) defines "bodily injury" as "physical pain, illness, or any impairment of physical condition."

**4.** The Honorable Barbara T. Takase presided.

known person to turn off the chainsaw. Pomroy rode with Lukens in the elevator but did not "put his hands on Mr. Lukens in any way." Rather, Lukens told Pomroy, "Make your move." Pomroy exited the elevator and assisted a woman who had gotten locked out of her apartment.

The State then rested its case. Immediately thereafter, defense counsel stated, "We'll rest too, Your Honor." At that point, the district court and Pomroy engaged in the following colloquy:

> THE COURT: Alright. Mr. Pomroy, before your attorney [rests the defense's case], let me advise you. You have the right to testify on your own behalf. That decision is yours and yours alone. If you choose to testify you will be subject to cross-examination by the state. If you choose not to testify, I cannot hold that against you. But the only evidence I will have is what the State has presented, unless you have other witnesses; you understand that?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Alright. Is it your choice to testify or not?
>
> THE DEFENDANT: I think I have already said what has happened, yeah. I don't have to testify.
>
> THE COURT: Alright. I don't know what you mean by "I've already said" because—
>
> THE DEFENDANT: In my report, when I made it two years ago, what had happened. That's pretty much what it is.
>
> THE COURT: So you're talking about what the officer testified to? Because you understand the police report is not in evidence. You understand that?
>
> THE DEFENDANT: I don't understand what you're saying. (Discussion between Counsel and Defendant)
>
> THE COURT: Alright.
>
> THE DEFENDANT: I don't need any testimony I guess.
>
> THE COURT: Your choice not to testify?

> THE DEFENDANT: Yes, ma'am.

The defense then rested.

The district court heard closing arguments then specifically found Lukens' testimony to be credible and corroborated by Berbelis' testimony. The district court stated there was no other credible evidence contradicting Lukens' and Berbelis' testimony. The district court did find bodily injury and stated it was not necessary for the State to show Lukens suffered from bruises or redness or that he required medical attention. The district court therefore found that the State had proven its case beyond a reasonable doubt.

Pomroy filed a Motion for New Trial. He argued that the district court failed to advise him of his right to testify before the start of trial. He also argued that, although the district court advised him of his right to testify immediately prior to the close of the defense's case, it did not question him enough to ensure that he adequately understood the decision not to testify.

The State opposed the Motion for New Trial, arguing that the trial transcript "indicate[d Pomroy] was informed of his right to testify or not to testify," Pomroy had a discussion with counsel after being informed of his rights, and Pomroy then elected not to testify after being informed of his rights.

The district court denied the Motion for New Trial and filed its Judgment of Conviction and Sentence, which found Pomroy guilty as charged and sentenced him to a year of probation, imprisonment of 180 days (with 90 days stayed), a $55 Crime Victim Compensation Fund fine, and a $75 Probation Fee. Pomroy timely appealed.

**B. Appeal**

Before the ICA, Pomroy first argued that his conviction was supported by insufficient evidence. He argued that Lukens' testimony of being struck repeatedly about the neck, chest, and shoulders was contradicted by other testimony that there was no evidence of injury and no request for medical attention. Pomroy argued that Lukens was, therefore, not credible.

Pomroy next argued (1) that the district court did not inform him of his right to

testify prior to trial; and (2) at the close of the State's case, when the district court informed Pomroy of his right to testify, the district court "failed to ensure that Mr. Pomroy adequately understood his right to testify and the possible consequences of his decision not to testify," given the "tentative nature of Mr. Pomroy's responses and his continuing apparent mistaken belief that the Court had received sufficient evidence from his side...." Pomroy argued that if the State was unable to show that the inadequate *Tachibana* colloquy was harmless beyond a reasonable doubt, then Pomroy's conviction must be vacated.

### 1. The State's Answering Brief

In its Answering Brief, the State responded only to Pomroy's second point of error. The State conceded that the district court did not conduct a prior-to-trial *Tachibana* colloquy with Pomroy, which is contrary to the mandate in *State v. Lewis*, 94 Hawai'i 292, 297, 12 P.3d 1233, 1238 (2000):

> [T]rial courts 'prior to the start of trial, [shall] (1) inform the defendant of his or her personal right to testify or not to testify and (2) alert the defendant that, if he or she has not testified by the end of the trial, the court will briefly question him or her to ensure that the decision not to testify is the defendant's own decision.

(Footnote omitted). The State further conceded that it could not "make a good faith argument that the error committed by the trial court ... was harmless beyond a reasonable doubt." To the State, under the totality of the circumstances existing at trial, where the only evidence before the district court had come from the State, had the district court complied with *Lewis* and advised Pomroy of his right to testify prior to trial, Pomroy might have testified and might have presented evidence establishing reasonable doubt that he committed assault. The State concluded with a request that the ICA reverse Pomroy's conviction. Pomroy did not file a Reply Brief.

5. The ICA panel consisted of Chief Judge Craig H. Nakamura and Associate Judges Daniel R.

### 2. The ICA's Memorandum Opinion

The ICA [5] rejected Pomroy's points of error and affirmed his conviction. *State v. Pomroy*, No. 29688, 2012 WL 6697229 (App. Dec. 26, 2012)(mem .op.) at 9, 11, 12, 14. As to Pomroy's first point of error (that insufficient evidence supported his conviction), the ICA held (1) that it was within the district court's province to determine that Lukens' testimony was credible; and (2) that the evidence, when viewed in the light most favorable to the State, showed that Lukens suffered physical pain, which constitutes "bodily injury" for the purpose of proving assault in the third degree in violation of HRS § 707–712(1)(a); evidence of bruising, redness, or other marks on Lukens' body was not required. *Pomroy*, mem. op. at 11–12.

As to the first part of Pomroy's second point of error (that the district court failed to advise Pomroy of his right to testify prior to trial), the ICA first set aside the State's concession of error as "not well taken." *Pomroy*, mem. op. at 10 n. 5. The ICA reasoned, "The State applied a harmless beyond a reasonable doubt standard of review [to the *Lewis* error], whereas the correct standard requires Pomroy to demonstrate actual prejudice." *Id.* Although the ICA recognized that the district court failed to engage Pomroy in the prior-to-trial *Tachibana* colloquy, it held that Pomroy had not shown actual prejudice. *Pomroy*, mem. op. at 10.

As to the second part of Pomroy's second point of error (that the district court failed to ensure that Pomroy's waiver of his right to testify was intelligent, knowing and voluntary during the colloquy conducted immediately prior to the close of Pomroy's case), the ICA held that (1) the district court fully advised Pomroy of his right to testify, and (2) "[a]ny confusion held by Pomroy over the evidentiary difference between the officer's trial testimony regarding Pomroy's statement and the police report was for Pomroy's counsel to explain, and the record indicates that Pomroy's counsel did discuss this issue with Pomroy." *Pomroy*, mem. op at 9, 10.

Foley and Alexa D.M. Fujise.

## III. Discussion

On certiorari, Pomroy argues that the ICA erred (1) in determining that the district court's failure to advise him of his right to testify prior to trial did not warrant reversal of the district court's judgment of conviction; and (2) in determining that the district court's *Tachibana* colloquy, given at the close of the State's case, was not defective and that Pomroy's waiver of his right to testify was valid. Pomroy's arguments are persuasive.

### A. Advisement of, and Waiver of, The Right to Testify

#### 1. *State v. Tachibana*

In *Tachibana*, 79 Hawai'i 226, 900 P.2d 1293, we examined the defendant's right to testify. We first noted that the right to testify is guaranteed by the United States Constitution's Fifth Amendment guarantee against compelled testimony, Sixth Amendment guarantee of compulsory process, and Fourteenth Amendment guarantee of due process; the Hawai'i Constitution's parallel guarantees under Article I, Sections 10, 14, and 5, respectively; and HRS § 801-2 (1993)'s statutory protection of the right to testify, which states, "In the trial of any person on the charge of any offense, he shall have a right ... to be heard in his defense." 79 Hawai'i at 231–32, 900 P.2d at 1298–99 (citing *State v. Silva*, 78 Hawai'i 115, 122–23, 890 P.2d 702, 709–10 (App.1995)). The decision to testify ultimately belongs to the defendant. *See* 79 Hawai'i at 232, 900 P.2d at 1299.

We held, "[I]n order to protect the right to testify under the Hawai'i Constitution, trial courts must advise criminal defendants of their right to testify and must obtain an on-the-record waiver of that right in every case in which the defendant does not testify." 79 Hawai'i at 236, 900 P.2d at 1303 (footnote omitted). In a footnote, we stated the purpose and substance of the right-to-testify colloquy as follows:

> In conducting the colloquy, the trial court must be careful not to influence the defendant's decision whether or not to testify and should limit the colloquy to advising the defendant

that he [or she] has a right to testify, that if he [or she] wants to testify that no one can prevent him [or her] from doing so, [and] that if he [or she] testifies the prosecution will be allowed to cross-examine him [or her]. In connection with the privilege against self-incrimination, the defendant should also be advised that he [or she] has a right not to testify and that if he [or she] does not testify then the jury can be instructed about that right.

79 Hawai'i at 236 n. 7, 900 P.2d at 1303 n. 7 (citations omitted).

As to when the colloquy must be conducted, we noted that "the ideal time to conduct the colloquy is immediately prior to the close of the defendant's case." 79 Hawai'i at 237, 900 P.2d at 1304. We also encouraged courts to give the colloquy prior to the start of trial:

> [A]lthough the ultimate colloquy should be conducted after all evidence other than the defendant's testimony has been received, it would behoove the trial court, prior to the start of trial, to (1) inform the defendant of his or her personal right to testify or not to testify and (2) alert the defendant that, if he or she has not testified by the end of the trial, the court will briefly question him or her to ensure that the decision not to testify is the defendant's own decision. Such an early warning would reduce the possibility that the trial court's colloquy could have any inadvertent effect on either the defendant's right not to testify or the attorney-client relationship.

79 Hawai'i at 237 n. 9, 900 P.2d at 1304 n. 9.

#### 2. *State v. Lewis*

In *Lewis*, 94 Hawai'i 292, 12 P.3d 1233, we revisited footnote 9 from *Tachibana*, which recommended a prior-to-trial colloquy on the right to testify. The defendant in that case ("Lewis") did testify in his defense. 94 Hawai'i at 294, 12 P.3d at 1235. The trial court, however, had not engaged him in a colloquy on his right to testify, or to not testify, prior to trial. *Id.* We held that a *Tachibana* colloquy was not required when a defendant has decided to testify, and that no prior-to-trial *Tachibana* colloquy was therefore required in Lewis's case. Prospectively, however, we

mandated that "trial courts 'prior to the start of trial (1) inform the defendant of his or her personal right to testify or not to testify and (2) alert the defendant that, if he or she has not testified by the end of the trial, the court will briefly question him or her to ensure that the decision not to testify is the defendant's own decision.'" 94 Hawai'i at 297, 12 P.3d at 1238 (footnote omitted).

We then noted, "Because we view this prior-to-trial advisement as incidental to the 'ultimate colloquy,' any claim of prejudice resulting from the failure of the trial court to give it must meet the same 'actual[ ] prejudice[ ]' standard applied to violations of the colloquy requirement." *Id.* (citing *Tachibana*, 79 Hawai'i at 237, 900 P.2d at 1304). *See also State v. Han*, 130 Hawai'i 83, 89, 306 P.3d 128, 134 (2013)("On appeal, the pretrial advisement is reviewed for 'actual prejudice.'") (citation omitted).

### B. Application of *Tachibana* and *Lewis* to Pomroy's Appeal

#### 1. The Omission of the Prior–to–Trial *Tachibana* Colloquy

On certiorari, Pomroy argues that the ICA erred in finding that he had not shown actual prejudice from the omission of the prior-to-trial *Tachibana* colloquy. Pomroy argues that he was actually prejudiced "by loss of reflection and measured consideration of his option to testify or not during the presentation of the State's case." Further, he argues that actual prejudice is evident in the district court's observation that "[n]o other credible evidence" existed to rebut the State's witnesses' testimony; had Pomroy testified, he could have presented credible, conflicting evidence.

In this case, however, we need not determine whether the absence of the prior-to-trial *Tachibana* colloquy actually prejudiced Pomroy, because we hold that the ultimate *Tachibana* colloquy was defective, and, therefore, the record does not reflect that Pomroy intelligently, knowingly and voluntarily waived the right to testify. *See Han*, 130 Hawai'i at 89, 306 P.3d at 134 ("In holding that the failure to properly conduct the *Tachibana* colloquy was harmful error, *infra*, the issue of whether Petitioner could demon-strate 'actual prejudice' with respect to the pre-trial colloquy need not be addressed here.").

#### 2. The Ultimate *Tachibana* Colloquy

■ The ICA erred in concluding (1) the district court's *Tachibana* advisement was not defective, and (2) that Pomroy had intelligently, knowingly, and voluntarily waived his right to testify. The district court's *Tachibana* advisement was defective because it did not fully advise Pomroy of his rights and because it was not a true exchange.

To recapitulate, the district court began its colloquy as follows:

THE COURT: Alright. Mr. Pomroy, before your attorney [rests the defense's case], let me advise you. You have the right to testify on your own behalf. That decision is yours and yours alone. If you choose to testify you will be subject to cross-examination by the state. If you choose not to testify, I cannot hold that against you. But the only evidence I will have is what the State has presented, unless you have other witnesses; you understand that?

THE DEFENDANT: Yes, ma'am.

The district court incompletely followed Tachibana's directive that trial courts advise defendants of the following:

That he [or she] has a right to testify, that if he [or she] wants to testify that no one can prevent him [or her] from doing so, [and] that if he [or she] testifies the prosecution will be allowed to cross-examine him [or her]. In connection with the privilege against self-incrimination, the defendant should also be advised that he [or she] has a right not to testify and that if he [or she] does not testify then the jury can be instructed about that right.

79 Hawai'i at 236 n. 7, 900 P.2d at 1303 n. 7 (citations omitted). Although the district court advised Pomroy that he had the right to testify on his behalf and that if he chose to testify, he would be subject to cross-examination by the State, the district court did not advise Pomroy that he had the right not to testify and that no one can prevent him from testifying.

Further, the district court did not engage Pomroy in a true colloquy. In *Han*, we noted that a colloquy is an "oral exchange" in which the "judge ascertains the defendant's understanding of the proceedings and of the defendant's rights." 130 Hawai'i at 90, 306 P.3d at 135 (citing *Black's Law Dictionary* 300 (9th ed.2009)(emphasis omitted)). The failure to engage in a true exchange to ascertain the defendant's understanding of the individual rights comprising the Tachibana colloquy results in the failure to "ensure that [the defendant] understood his rights [and] amounts to a failure to obtain the on-the-record waiver required by Tachibana." 130 Hawai'i at 91, 306 P.3d at 136. In this case, the district court recited a litany of rights. It then asked Pomroy if he "understood that," and it is unclear which right "that" referenced.

■ Moreover, Pomroy's lack of understanding became increasingly evident as the colloquy continued:

THE COURT: Alright. Is it your choice to testify or not?

THE DEFENDANT: I think I have already said what has happened, yeah. I don't have to testify.

THE COURT: Alright. I don't know what you mean by "I've already said" because—

THE DEFENDANT: In my report, when I made it two years ago, what had happened. That's pretty much what it is.

THE COURT: So you're talking about what the officer testified to? Because you understand the police report is not in evidence. You understand that?

THE DEFENDANT: I don't understand what you're saying. (Discussion between Counsel and Defendant)

THE COURT: Alright.

THE DEFENDANT: I don't need any testimony I guess.

THE COURT: Your choice not to testify?

THE DEFENDANT: Yes, ma'am.

From this exchange, it appeared that Pomroy mistakenly believed that whatever he had said in a police report was before the court. The district court explained that the police report was not in evidence and that Pomroy would instead have to rely on Bohol's testimony to get his side of the story into evidence.[6] Even after this explanation, the district court did not ascertain that Pomroy understood what it had told him, or, more importantly, understood his right to testify (or not testify). On certiorari, Pomroy argues he repeatedly expressed doubt and uncertainty over what the district court was telling him. From the record before us, we agree.[7]

6. It may have been preferable for the district court not to comment on the state of the evidence and to, instead, follow the model colloquy set forth in *Tachibana*. 79 Hawai'i at 236 n. 7, 900 P.2d at 1303 n. 7. Doing so reduces the risk that the district court may inadvertently "influence the defendant's decision whether or not to testify." *Id*. The defendant's counsel is in a better position to advise the defendant to exercise his or her right to testify based on the state of the evidence.

7. The Majority and Dissent differ chiefly on how to interpret the colloquy on the record. The Dissent disagrees with our view of the record that Pomroy was confused during the colloquy. Dissent at 4. The Dissent states, "The district court could observe Pomroy's demeanor and assess the inflection in his voice, which we cannot do from a cold record, and there is no reason to assume that the court would have ignored uncertainty on Pomroy's part if that is how he presented to the court." Dissent at 4. Respectfully, the Dissent's statement suggests that the purpose of the colloquy is for the trial court to make a determination, almost akin to a credibility deter-

mination with respect to viewing witnesses firsthand, that the defendant understood his or her rights, and that the appellate courts should accept such a determination. *See, e.g., Bhakta v. County of Maui*, 109 Hawai'i 198, 217, 124 P.3d 943, 962 (2005)("This court must, therefore, 'generally accept the determination of the court which had the opportunity to observe the demeanor of the witnesses ....") (citation omitted). However, in *Han*, we noted that one of the reasons for adopting the *Tachibana* requirement was so "a trial judge would <u>establish a record</u> that would effectively settle the right-to-testify issues in the case...." *Han*, 130 Hawai'i at 91, 306 P.3d at 136 (emphasis added). Appellate review of the sufficiency of the *Tachibana* colloquy is necessarily based on a cold record. We are tasked with scrutinizing the language used by both the court and the defendant to assess whether a defendant knowingly, intelligently, and voluntarily waived his or her right to testify. That task cannot be accomplished were we to defer to the trial court's apparent assessment of the defendant's understanding whenever the express language on the record leaves us with any

■ The district court "simply advised Petitioner of his rights, without any 'discussion,' 'exchange' or ascertainment that Petitioner understood his rights." *Han*, 130 Hawai'i at 90, 306 P.3d at 135. Therefore, the district court "did not adequately establish, on-the-record, that Petitioner understood what rights he was waiving" or that he "had in fact understood the rights listed by the court...." 130 Hawai'i at 91, 306 P.3d at 136. "The failure to ensure that Petitioner understood his rights amounts to a failure to obtain the on-the-record waiver required by *Tachibana*." *Id*. In sum, Pomroy's constitutional right to testify was violated.

■ "Once a violation of the constitutional right to testify is established, the conviction must be vacated unless the State can prove that the violation was harmless beyond a reasonable doubt." *Tachibana*, 79 Hawai'i at 240, 900 P.2d at 1307(citations omitted). It cannot be said that such violation was harmless beyond a reasonable doubt, because it is unknowable from this record whether Pomroy's testimony, had he given it, could have established reasonable doubt that he committed assault in the third degree. "[I]t is inherently difficult, if not impossible, to divine what effect a violation of the defendant's constitutional right to testify had on the outcome of any particular case. The record in this case offers no clue to what [the defendant] would have said, under oath, on the witness stand." *State v. Hoang*, 94 Hawai'i 271, 279, 12 P.3d 371, 379 (2000) (citation omitted). *See also Tachibana*, 79 Hawai'i at 240, 900 P.2d at 1307 ("From our review of the record, 'it is impossible to conclude, beyond a reasonable doubt, that [Tachibana]'s testimony could not have created a reasonable doubt in the mind of the factfinder and, hence, that the [violation of Tachibana's right to testify] could not have contributed to the conviction.") (citing *Silva*, 78 Hawai'i at 126, 890 P.2d at 713).

Pomroy has shown a violation of the constitutional right to testify that cannot be considered harmless beyond a reasonable doubt. Therefore, his conviction cannot stand.

doubt about the validity of the colloquy and/or

## C. Sufficiency of the Evidence and Credibility of the Complaining Witness

Next, we address whether this court must reverse Pomroy's conviction due to double jeopardy based on insufficiency of the evidence, or vacate and remand his case for a new trial. Principles of double jeopardy do not preclude a retrial in this case because substantial evidence supported Pomroy's conviction. *See State v. Kalaola*, 124 Hawai'i 43, 237 P.3d 1109 (2010) ("[T]he double jeopardy clause does not bar retrial on the means of establishing guilt for which there was sufficient evidence at trial" because "error in this case was trial error.") (citing *State v. Jones*, 96 Hawai'i 161, 184 n. 30, 29 P.3d 351, 374 n. 30 (2001)).

■ On certiorari, Pomroy argues that the ICA erred in concluding there was substantial evidence to support the district court's conclusion that Pomroy assaulted Lukens. While Pomroy agrees that "testimony of feeling pain alone could conceivably support a conviction of Assault in the Third Degree," he nonetheless argues that "[c]ommon sense tells us that if [Lukens] had testified truthfully about the mechanism of his alleged injuries, physical evidence of those injuries would have been <u>necessarily</u> visible...." Pomroy argues that the lack of physical corroborative evidence indicates the assault "could not have occurred," regardless of whether the evidence (or absence of evidence) is viewed in the light most favorable to the State. To Pomroy, Lukens' testimony "defied physics and human biology."

■ We disagree. To convict Pomroy for the offense of assault in the third degree in violation of HRS § 707–712(1)(a), the State needed to prove beyond a reasonable doubt that Pomroy intentionally, knowingly, or recklessly caused bodily injury to Lukens; bodily injury is defined in HRS § 707–700 to include "physical pain." This court views the evidence adduced at trial "in the strongest light for the prosecution...." *State v. Matavale*, 115 Hawai'i 149, 157, 166 P.3d 322, 330 (2007) (citation omitted). The test on appeal is whether substantial evidence supports the

the defendant's waiver.

trier of fact's conclusion. 115 Hawai'i at 157–58, 166 P.3d at 330–31 (citation omitted). "'Substantial evidence' as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable [a person] of reasonable caution to support a conclusion." 115 .Hawai'i at 158, 166 P.3d at 331 (citation omitted).

▮▮▮ At trial, Lukens testified that he felt physical pain that measured a seven or eight on a ten-point scale. Berbelis testified that Lukens complained to her of feeling pain. Kubojiri also testified that Lukens complained to him of physical pain. Pomroy argues that Lukens could not have been telling the truth if no physical injuries were visible after the assault he describes. This court, however, has stated, "Indeed, even if it could be said in a bench trial that the conviction is against the weight of the evidence, as long as there is substantial evidence to support the requisite findings for conviction, the trial court will be affirmed." *Matavale,* 115 Hawai'i at 158, 166 P.3d at 331 (citation omitted). Further, the district court found Lukens' (and Berbelis') testimony to be credible. "The question of credibility and the weight to be given the evidence is for the trier of fact to determine and is not disturbed on appeal." *State v. Ewing,* 81 Hawai'i 156, 165, 914 P.2d 549, 558 (App.1996) (citation omitted). It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the trier of fact." Therefore, substantial evidence supports Pomroy's conviction, and the prohibition against double jeopardy does not preclude a remand of this case to the district court for a new trial.

## IV. Conclusion

We hold that the district court's ultimate *Tachibana* colloquy was defective because it incompletely advised Pomroy of his right to testify and because it did not establish that Pomroy understood his rights. As a result, the district court did not obtain an on-the-record waiver of the right to testify from Pomroy. Thus, Pomroy has demonstrated a constitutional violation of his right to testify,

which, under the circumstances of this case, cannot be considered harmless. We also hold that substantial evidence supports Pomroy's conviction; consequently, the prohibition against double jeopardy does not preclude retrial. We therefore vacate the ICA's Judgment on Appeal, vacate the district court's Judgment of Conviction and Sentence, and remand this case to the district court for a new trial.

Dissenting Opinion by RECKTENWALD, C.J., In Which NAKAYAMA, J., Joins.

Defendant Henry Pomroy asserts that (1) the district court erred in failing to provide him with a prior-to-trial advisement regarding his right to testify, as required by *State v. Lewis,* 94 Hawai'i 292, 12 P.3d 1233 (2000); (2) the colloquy that the court conducted during trial was defective under *Tachibana v. State,* 79 Hawai'i 226, 900 P.2d 1293 (1995); and (3) there was insufficient evidence to support his conviction. For the reasons set forth below, I would affirm Pomroy's conviction. Accordingly, I respectfully dissent.

Although the district court erred in failing to advise Pomroy before trial of his right to testify, *see Lewis,* 94 Hawai'i at 297, 12 P.3d at 1238, Pomroy has not demonstrated that the lack of such an advisement actually prejudiced him. Pomroy argues that the lack of that advisement denied him the opportunity to reflect, during the course of the trial, on whether he wanted to testify. However, this deficiency would be true for every defendant, and thus cannot constitute the kind of actual prejudice required by *Lewis.* 94 Hawai'i at 297, 12 P.3d at 1238.

With regard to the colloquy conducted by the court at the close of Pomroy's case, that colloquy was sufficient to establish that Pomroy knowingly, intelligently and voluntarily waived his right to testify. It is true, as the majority observes, that the colloquy was not perfect in every respect. The district court did not expressly advise Pomroy that he had the right not to testify. However, that principle was implicit in the court's discussion of the consequences that would follow "if you <u>choose</u> not to testify" (emphasis added), and any deficiency in this regard would seem

immaterial given that Pomroy did not in fact take the stand.

The court also did not explicitly advise Pomroy that no one could prevent him from testifying. However, that principle was implicit in the court's statement that the decision to testify "is yours and yours alone," and there is nothing in the record to suggest that the court's failure to be more explicit had any effect on Pomroy's decision.

The district court also did not ask Pomroy, each time that it described to him an aspect of the right to testify, whether he understood what he was being told. Instead, the court waited until the end of its description and then asked Pomroy, "You understood that?" The majority characterizes this as a failure to engage in a "true exchange" with Pomroy. While it might be better practice to question a defendant regarding his or her understanding of each aspect of the right individually, there is nothing to suggest that Pomroy was somehow confused by the approach taken by the court. To the contrary, the record shows that Pomroy was actively engaged in the discussion and not reluctant to engage in a "true exchange" with the court, as evidenced by his volunteering his rationale for not testifying, i.e., that "I have already said what has happened."

At that point, the district court recognized Pomroy's error in assuming that his statement to the police was in evidence, pointed the error out to him without advising him what he should do, and then allowed him to consult with counsel. In my view, those actions were appropriate and sensible. However, the majority implicitly criticizes them, and suggests that "[i]t may have been preferable for the district court not to comment on the state of the evidence," but rather to simply stick to the script suggested by *Tachibana.* Majority Opinion at 93 n.6, 319 P.3d at 1101. Respectfully, I cannot see how the interests of justice are furthered by suggesting that the court should ignore an obvious misunderstanding by the defendant, while criticizing the court for failing to engage in a "true exchange" with the defendant by not asking for a yes or no answer with regard to each aspect of the right to testify identified in *Tachibana.* Of course, there

are risks whenever a court departs from a set script; trial judges should be aware of those risks and avoid pressuring the defendant to testify or not. But, in my view, there is a greater risk in suggesting that the court not respond to an obvious misunderstanding by the defendant.

After Pomroy spoke with his attorney, the following exchange occurred:

THE COURT: Alright.

THE DEFENDANT: I don't need any testimony I guess.

THE COURT: Your choice not to testify?

THE DEFENDANT: Yes, ma'am.

Pomroy seizes on the phrase "I guess" to suggest that he still did not understand his rights even after consulting with counsel, a position which the majority accepts. Majority Opinion at 92–93, 319 P.3d at 1100–01. Respectfully, I cannot agree that this comment demonstrates continued confusion by Pomroy. The district court could observe Pomroy's demeanor and assess the inflection in his voice, which we cannot do from a cold record, and there is no reason to assume that the court would have ignored uncertainty on Pomroy's part if that is how he presented to the court. Indeed, the district court's engagement with Pomroy regarding the state of the evidence suggests the opposite. Moreover, Pomroy had consulted with his attorney, and then answered affirmatively to the follow up question, "Your choice not to testify?"

Given all these circumstances, the record sufficiently establishes that Pomroy's waiver of his right to testify was knowing, intelligent and voluntary. That determination, after all, is what this entire process is about—or at least as the process was initially envisioned when adopted by this court in *Tachibana.* 79 Hawai'i at 237, 900 P.2d at 1304 ("In the instant case, the trial court did not at any time conduct a colloquy with Tachibana to ensure that he was aware of his right to testify and that he knowingly and voluntarily waived that right."). Although we acknowledged that fundamental position in our subsequent decision in *Lewis,* 94 Hawai'i at 296, 12 P.3d at 1237 ("there is nothing to indicate here that Petitioner's decision to testify was anything other than voluntarily, knowingly,

and intelligently made"), we also identified a second "objective" of the *Tachibana* colloquy, "the minimization of post-conviction disputes over the actual waiver of the right to testify," *id.* at 295, 12 P.3d at 1236. Respectfully, with today's decision, that second "objective" has become the tail that wags the dog, and the lines between what is required by the constitution and what is required in an effort to reduce post-conviction disputes are further blurred.[1]

Lastly, with regard to Pomroy's third argument, there was sufficient evidence to support the conviction, when viewed in the light most favorable to the prosecution. *State v. Bailey*, 126 Hawai'i 383, 398–99, 271 P.3d 1142, 1157–58 (2012) ("Evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction[.]" (brackets omitted) (quoting *State v. Kalaola*, 124 Hawai'i 43, 49, 237 P.3d 1109, 1115 (2010))).

Accordingly, I would affirm the judgment of the Intermediate Court of Appeals.

---

1. Indeed, by suggesting that a trial court's assessment of a defendant's understanding of his right to testify is not relevant, the majority opinion elevates the goal of creating a record for appellate review over the original purpose of the collo- quy, that is, ensuring that the defendant's waiver was knowingly, voluntarily and intelligently given. *See* majority opinion at 93 n.7, 319 P.3d at 1101.