**NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-22-0000252
27-FEB-2023
08:23 AM
Dkt. 51 SO**

NO. CAAP-22-0000252

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellee, v.
WYNETTE McMILLAN, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CPC-17-0000215)


SUMMARY DISPOSITION ORDER
(By: Ginoza, C.J., and Wadsworth and Chan, JJ.)

Defendant-Appellant Wynette McMillan (**McMillan**) appeals from the April 6, 2022 Judgment of Conviction and Sentence; Notice of Entry (**Judgment**), entered in the Circuit Court of the First Circuit (**Circuit Court**).[1] Following a jury trial, McMillan was convicted of Robbery in the First Degree, in violation of Hawaii Revised Statutes (**HRS**) § 708-840(1)(b)(ii) (2014).

On appeal, McMillan contends that the Circuit Court erred:  (1) in taking no action on McMillan's challenge to the court's jurisdiction; and (2) in failing to conduct a proper pre-trial advisement under State v. Lewis, 94 Hawaiʻi 292, 12 P.3d 1233 (2000), and a proper ultimate colloquy under Tachibana v. State, 79 Hawaiʻi 226, 900 P.2d 1293 (1995).

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we resolve McMillan's contentions as follows:

---

[1] The Honorable Catherine H. Remigio presided.

(1) McMillan argues that the Circuit Court erred "when it failed to act upon McMillan's challenge to the court's jurisdiction." This argument appears to rest not on any explicit jurisdictional challenge in the Circuit Court, but on McMillan's statement at a July 9, 2019 trial call, as follows: "I'm a Kanaka Maoli, heir of the Hawaiian Kingdom governed by our own law, our own jurisdiction, and a neutral country."

The Hawaiʻi Supreme Court has held that "'whatever may be said regarding the lawfulness' of its origins, 'the State of Hawaiʻi is now, a lawful government.' Individuals claiming to be citizens of the Kingdom and not of the State are not exempt from application of the State's laws." State v. Kaulia, 128 Hawaiʻi 479, 487, 291 P.3d 377, 385 (2013) (brackets, ellipses, and internal citation omitted) (quoting State v. Fergerstrom, 106 Hawaiʻi 43, 55, 101 P.3d 652, 664 (App.), aff'd, 106 Hawaiʻi 41, 101 P.3d 225 (2004)).

Here, the State charged McMillan based on her conduct in the City and County of Honolulu. McMillan is thus subject to the State's criminal jurisdiction in this case.

(2) McMillan argues that the Circuit Court's pre-trial Lewis advisory was defective because the court: "failed to succinctly advise McMillan of her constitutional right to testify"; "failed to confirm that McMillan understood that she had a constitutional right to testify"; "rattled off five separate statements without any response or confirmation from McMillan that she understood what the circuit court was trying to relate"; and "failed to confirm that McMillan understood that she had the right not to testify." McMillan makes a similar argument regarding the court's ultimate Tachibana colloquy. McMillan also argues that "McMillan's bizarre and irrelevant responses to the circuit court's questions raise true issues of the salient fact that McMillan's mental health status more than likely prevented her from understanding and appreciating the circuit court's Lewis and Tachibana colloqu[ie]s[.]"

In State v. Martin, 146 Hawaiʻi 365, 463 P.3d 1022 (2020), the Hawaiʻi Supreme Court summarized the relevant case law as follows:

2

>Our law protects both the right to testify and the right not to testify. State v. Celestine, 142 Hawaiʻi 165, 169, 415 P.3d 907, 911 (2018). Tachibana v. State, 79 Hawaiʻi 226, 900 P.2d 1293 (1995), established the requirement that when a defendant in a criminal case indicates an intention not to testify, the trial court must advise the defendant of the right to testify and must obtain an on-the-record waiver of the right. 79 Hawaiʻi at 236, 900 P.2d at 1303. We stated that this advisement should consist of informing the defendant (1) that they have a right to testify, (2) that if they want to testify, no one can prevent them from doing so, and (3) that if they testify, the prosecution will be allowed to cross-examine them. 79 Hawaiʻi at 236 n.7, 900 P.2d at 1303 n.7. We also stated that in connection with the privilege against self-incrimination, the defendant should also be advised (4) that they have a right not to testify and (5) that if they do not testify, then the jury can be instructed about that right. Id. (citations omitted). . . .
>
>After Tachibana, we also held that a second component of the Tachibana colloquy involves the court engaging in a true "colloquy" with the defendant. Celestine, 142 Hawaiʻi at 170, 415 P.3d at 912, citing State v. Han, 130 Hawaiʻi 83, 90-91, 306 P.3d 128, 135-36 (2013). This requires "a verbal exchange between the judge and the defendant 'in which the judge ascertains the defendant's understanding of the proceedings and of the defendant's rights.'" Celestine, 142 Hawaiʻi at 170, 415 P.3d at 912 (citing Han, 130 Hawaiʻi at 90, 306 P.3d at 135 (emphasis omitted)).
>
>. . . .
>
>A defendant's right to testify is violated when the colloquy does not establish "an objective basis for finding that [the defendant] knowingly, intelligently, and voluntarily gave up" their right to testify. Han, 130 Hawaiʻi at 91, 306 P.3d at 136. Courts look to the totality of the facts and circumstances to determine whether a waiver of the right to testify was voluntarily and intelligently made. 130 Hawaiʻi at 89, 306 P.3d at 134.

Id. at 378-79, 463 P.3d at 1035-36 (footnotes omitted).

Additionally, in Lewis, the supreme court adopted a prospective requirement that, "prior to the start of trial, trial courts must '(1) inform the defendant of his or her personal right to testify or not to testify and (2) alert the defendant that if he or she has not testified by the end of the trial, the court will briefly question the defendant to ensure that the decision not to testify is the defendant's own decision.'" State v. Monteil, 134 Hawaiʻi 361, 371, 341 P.3d 567, 577 (2014) (quoting Lewis, 94 Hawaiʻi at 297, 12 P.3d at 1238); see also id. at 373, 341 P.3d at 579 (adopting a prospective rule that trial courts are required to inform defendants during the Lewis

advisement that the decision not to testify cannot be used by the fact finder to decide the case).

Here, prior to the start of trial on January 22, 2020, the Circuit Court advised McMillan as follows:

> THE COURT: . . . .
>
> . . . Miss McMillan, you have a constitutional right to testify in your own defense. I believe that it's a decision that you are going to make. Even though [defense counsel] has an obligation to give you his advice, obviously based on what we've discussed before with your relationship, I think you understand that it's your decision. Right? No matter what he says, you can make that decision, right, whether you want to testify?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And you also understand that if you testify that not only will [defense counsel] ask you questions, but . . . the prosecutor, will be asking you questions called cross-examination. Do you understand that?
>
> THE DEFENDANT: Hai. (Nods head).
>
> THE COURT: Yes. "Hai" means yes. You also have a constitutional right not to testify. That means to remain silent. If you decide not to testify, then I will let the jury know in writing, and orally, that they cannot use your silence against you when they decide if the State has met their burden of proof.
>
> So just as you make a decision if you want to testify, you also make a decision if you don't want to testify. Do you understand that?
>
> . . . .
>
> THE COURT: . . . [R]egarding your right not to testify, do you understand that you don't have to testify if you don't want to? Do you understand that?
>
> THE DEFENDANT: Hai.
>
> THE COURT: Okay. If you have not testified by the end of trial, I will briefly question you to make sure that it was your decision not to testify, and not [defense counsel's] decision. Okay?
>
> THE DEFENDANT: (Shrugging shoulders)
>
> THE COURT: Do you understand what I'm saying?
>
> THE DEFENDANT: Yeah, I did understand everything you said.
>
> THE COURT: Okay. Thank you. . . .

After the State rested, defense counsel indicated his understanding that McMillan did not wish to testify, and the Circuit Court engaged in the following colloquy with McMillan:

THE COURT: Hi, Miss McMillan. This is the same thing I talked with you when we started trial. This has to do with your right to testify or to remain silent. And I just want to make sure that it's not [defense counsel] who is putting pressure on you to do this, that it's your decision and not his. So you understand that he's your lawyer. And you can ask him for legal advice. But it's your decision, right? Not his. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And you also know that if you decided to testify that you would be questioned also by the prosecutor; is that right? That guy. Do you understand that?

[DEFENSE COUNSEL]: You have to answer.

THE DEFENDANT: Yes.

THE COURT: If you decided not to testify and remain silent, then I would instruct the jury that they cannot use your silence against you when they decide if the prosecution's case has been proven beyond a reasonable doubt. So there is an actual written instruction that I would give to them saying -- I will give to them, saying just because you didn't testify they can't -- they can't go back there and ask each other why didn't she testify? Or what would she have said? All of that is not allowed. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now, [defense counsel] is telling me you do not intend to testify. Is this your decision?

THE DEFENDANT: Yes.

THE COURT: Okay. Thank you. . . .

The supreme court has found <u>Tachibana</u> advisements deficient where they "did not fully advise [the defendant] of his rights . . . ." <u>State v. Pomroy</u>, 132 Hawaiʻi 85, 92, 319 P.3d 1093, 1100 (2014). In <u>Pomroy</u>, for example, the supreme court ruled that the trial court's ultimate <u>Tachibana</u> colloquy "incompletely followed <u>Tachibana</u>'s directive" because it failed to advise the defendant that he had the right not to testify and that no one could prevent him from testifying. <u>Id.</u> at 92, 319 P.3d at 1100. Similarly, in <u>State v. Eduwensuyi</u>, 141 Hawaiʻi 328, 409 P.3d 732 (2018), the supreme court found that the trial court's ultimate <u>Tachibana</u> colloquy was deficient because it failed to advise the defendant that no one could prevent him from testifying. <u>Id.</u> at 333, 409 P.3d at 737.

Under these standards, the Circuit Court's ultimate <u>Tachibana</u> colloquy was deficient. Although the court's pre-trial

advisement informed McMillan that she had a constitutional right to testify and a constitutional right not to testify, the court's ultimate colloquy did not expressly inform or remind McMillan that she had these independent rights, or ascertain that she understood them, but instead conflated them in a mere passing reference to "your right to testify or to remain silent." In addition, the Circuit Court did not directly inform McMillan that if she wanted to testify, no one could prevent her from doing so.[2] See Pomroy, 132 Hawai'i at 92, 319 P.3d at 1100; Eduwensuyi, 141 Hawai'i at 333, 409 P.3d at 737. The Circuit Court instead focused on a related but narrower concern, "mak[ing] sure" that defense counsel had not pressured McMillan "to do this," and that "it's your decision and not his." As a result, McMillan's "Yes" response to the court's inquiry — "But it's your decision, right? Not his. Do you understand that?" — does not indicate that McMillan understood she had a constitutional right to testify and that if she wanted to testify, no one could prevent her from doing so. Cf. Celestine, 142 Hawai'i at 172, 415 P.3d at 914 ("[The defendant's] 'No' response to the court's inquiry of whether anyone was forcing her not to testify does not indicate that she understood she had a constitutional right to testify, only that no one was forcing her not to testify.") Rather, McMillan's "Yes" response indicated only that she understood it was her decision, not her lawyer's decision, and her response did not indicate an objective basis for finding she understood she had a right to testify. See id.

On this record, given the totality of the facts and circumstances, we cannot conclude that McMillan's waiver of the right to testify was knowingly, intelligently, and voluntarily made.[3]

---

[2]     The Circuit Court's pretrial advisement similarly failed in this respect.

[3]     The Circuit Court's ultimate Tachibana colloquy was deficient even in the absence of any "salient fact" concerning McMillan's ability to understand the colloquy. We thus need not decide whether McMillan's allegedly "bizarre and irrelevant responses to the [C]ircuit [C]ourt's questions" constituted evidence of "salient facts" that should have served as an additional reason for a more searching inquiry of McMillan. See Han, 130 Hawai'i at 92, 306 P.3d at 137.

"Once a violation of the constitutional right to testify is established, the conviction must be vacated unless the State can prove that the violation was harmless beyond a reasonable doubt." Pomroy, 132 Hawaiʻi at 94, 319 P.3d at 1102 (quoting Tachibana, 79 Hawaiʻi at 240, 900 P.2d at 1307). Here, the record does not contain any indication of what McMillan would have said if she had testified. See State v. Hoang, 94 Hawaiʻi 271, 279, 12 P.3d 371, 379 (App. 2000) ("In general, it is inherently difficult, if not impossible, to divine what effect a violation of the defendant's constitutional right to testify had on the outcome of any particular case."). Based on our review of the record, we cannot conclude that the Circuit Court's deficient colloquy was harmless beyond a reasonable doubt.

For these reasons, we vacate the April 6, 2022 Judgment of Conviction and Sentence; Notice of Entry, entered in the Circuit Court of the First Circuit. We remand the case for a new trial and for further proceedings consistent with this Summary Disposition Order.

DATED: Honolulu, Hawaiʻi, February 27, 2023.


On the briefs:

Walter J. Rodby
for Defendant-Appellant.

Donn Fudo,
Deputy Prosecuting Attorney,
City & County of Honolulu,
for Plaintiff-Appellee.

/s/ Lisa M. Ginoza
Chief Judge


/s/ Clyde J. Wadsworth
Associate Judge


/s/ Derrick H.M. Chan
Associate Judge