**NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000395
28-JUN-2021
08:18 AM
Dkt. 81 SO**

NO. CAAP-19-0000395

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee, v.
JOHN APELE KALUAU 3RD, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE THIRD CIRCUIT
NORTH & SOUTH KONA DIVISION
(CASE NO. 3DTC-18-051455)


SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, and Hiraoka and Wadsworth, JJ.)

Defendant-Appellant John Apele Kaluau 3rd (**Kaluau**) appeals from the Judgment and Notice of Entry of Judgment (**Judgment**), entered on April 18, 2019, in the District Court of the Third Circuit, North and South Kona Division (**district court**).[1] After a bench trial, Kaluau was convicted of Driving a Motor Vehicle without a License (**DWOL**), in violation of Hawaii Revised Statutes (**HRS**) § 286-102(b) (Supp. 2017),[2] and Driving Without Motor Vehicle Insurance (**DWOMVI**), in violation of HRS § 431:10C-104(a) (2005).[3]

---

[1] The Honorable Margaret K. Masunaga presided.

[2] HRS § 286-102(b) provides, in relevant part: "A person operating the following category or combination of categories of motor vehicles shall be examined as provided in section 286-108 and duly licensed by the examiner of drivers: . . . . (3) Passenger cars of any gross vehicle weight rating. . . ." (Format altered.)

[3] HRS § 431:10C-104(a) provides: "Except as provided in section 431:10C-105, no person shall operate or use a motor vehicle upon any public street, road, or highway of this State at any time unless such motor vehicle is insured at all times under a motor vehicle insurance policy."

On appeal, Kaluau contends that: (1) there was no substantial evidence to support the DWOMVI conviction, because Plaintiff-Appellee State of Hawaiʻi (**State**) failed to prove that Kaluau drove on a public street, road or highway; and (2) the district court conducted a deficient <u>Tachibana</u>[4/] colloquy.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Kaluau's contentions as follows:

(1) Kaluau argues that the State failed to prove every material element of the alleged DWOMVI offense, because the State did not elicit any evidence that Hawaiʻi Belt Road, where the alleged offense occurred, is a "public street, road, or highway."[5/] HRS § 431:10C-104(a). Although Kaluau did not raise

---

[4/] <u>Tachibana v. State</u>, 79 Hawaiʻi 226, 236, 900 P.2d 1293, 1303 (1995).

[5/] HRS § 291E-1 (2007) states, in relevant part:

"Public way, street, road, or highway" includes:

    (1) The entire width, including berm or shoulder, of every road, alley, street, way, right of way, lane, trail, highway, or bridge;

    . . . .

    (3) Any bicycle lane, bicycle path, bicycle route, bikeway, controlled-access highway, laned roadway, roadway, or street, as defined in section 291C-1; or

    (4) Any public highway, as defined in section 264-1.

HRS § 264-1 (Supp. 2017) states, in relevant part:

    (a) All roads, highways, alleys, streets, ways, lanes, bikeways, bridges, and all other real property highway related interests in the State, opened, laid out, subdivided, consolidated, and acquired and built by the government are declared to be public highways. Public highways are of two types:

        (1) State highways, which are those lands, interests, or other real property rights, as defined above, having an alignment or possession of a real property highway related interest as established by law, subdivided and acquired in accordance with policies and procedures of the department of transportation, separate and exempt from any county subdivision ordinances,

(continued...)

this objection at trial, we may notice plain error for the first time on appeal where the error violates a fundamental right, such as the right to have all elements of an offense proven beyond a reasonable doubt.  See State v. Ui, 142 Hawaiʻi 287, 298, 418 P.3d 628, 639 (2018).

The State argues that this court can and must take judicial notice that the section of Hawaiʻi Belt Road where the alleged offense occurred is a public highway.

> Hawaiʻi Rules of Evidence [**HRE**] Rule 201 governs judicial notice of adjudicative facts; it provides that "a judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

State v. Abdon, 137 Hawaiʻi 19, 26, 364 P.3d 917, 924 (2016) (original brackets omitted) (quoting HRE Rule 201(b)).  Under HRE Rule 201(c), "[a] court *may* take judicial notice, whether requested or not," of an adjudicative fact, and under HRE Rule 201(d), a court "*shall* take judicial notice" of an adjudicative fact "if requested by a party and supplied with the necessary information."  (Emphases added.)  Moreover, "a court may take judicial notice 'at any stage of the proceeding,' including on appeal[.]"  Abdon, 137 Hawaiʻi at 27, 364 P.3d at 925 (quoting HRE Rule 201(f)).

The State presented evidence at trial, through the testimony of the citing officer, that the traffic stop that led to the charged offenses occurred "on Hawaii Belt Road in the vicinity of fronting this courthouse."  In this appeal, the State has submitted copies, attached to the State's answering brief, of: (1) Hawaiʻi County Code §§ 24-253 through 24-263, which are traffic schedules establishing speed limits for various streets, roads, and highways in the County of Hawaiʻi, including Hawaiʻi

---

[5]/(...continued)
> and all those under the jurisdiction of the department of transportation; and

> 2)  County highways, which are all other public highways.

Belt Road; and (2) a Google Maps internet printout showing a section of Hawaiʻi Belt Road adjacent to the courthouse formerly located on Haukapila Street. See infra note 7. The State argues that based on these documents, and pursuant to State v. Davis, 133 Hawaiʻi 102, 324 P.3d 912 (2014), this court should take judicial notice of the fact that the alleged DWOMVI offense occurred on a public highway.

In Davis, the defendant argued that no substantial evidence supported his conviction of operating a vehicle after license and privilege have been suspended or revoked for operating a vehicle under the influence of an intoxicant, in violation of HRS §§ 291E-62(a)(1) and/or (2) (2007), where the State had failed to prove that the defendant had operated a vehicle on a "public way, street, or highway." 133 Hawaiʻi at 104, 121-22, 324 P.3d at 914, 931-32. Testimony by the citing officer established the location of the charged offense. Id. at 105, 324 P.3d at 915. The Hawaiʻi Supreme Court took judicial notice of the fact that the section of road at issue was on a "public highway," pursuant to a City and County of Honolulu ordinance and speed schedule that designated that portion of the road as a "public way," and HRS § 291E-1. Id. at 122, 324 P.3d at 932. On this basis, the court concluded that sufficient evidence was adduced to prove that the defendant operated his vehicle on a "public way." Id.

Here, one of the traffic schedules supplied by the State, Hawaiʻi County Code § 24-255(f), lists speed limits for Hawaiʻi Belt Road, but it does not explicitly identify that road as a "public highway" or "public way." However, the State also argues that the section of Hawaiʻi Belt Road where the alleged offense occurred is listed as a public road or highway by the State Department of Transportation (**DOT**). In fact, the DOT's website contains a list of "Big Island State Roads and Highways," which includes "Route 11, Hawaii Belt Road, [from its] [i]ntersection with Route 19 [in Hilo] to Kailua Kona."[6] DOT,

---

[6] This list can also be accessed by clicking on the DOT website link "Roads and Highways on the Big Island Under State Jurisdiction." See DOT,

(continued...)

Big Island State Roads and Highways, https://hidot.hawaii.gov/highways/home/hawaii/state-roads-and-highways/ (last visited June 16, 2021). Under HRS § 291E-1(4), a "[p]ublic way, street, road, or highway" includes "[a]ny public highway, as defined in section 264-1[,]" and under HRS § 264-1(a)(1), "[p]ublic highways" include "[s]tate highways . . . under the jurisdiction of the [DOT.]" If the section of Hawaiʻi Belt Road where the alleged offense occurred was located on the section identified in the DOT's list, we may take judicial notice of the fact that the alleged offense occurred on a "public highway." See Davis, 133 Hawaiʻi at 122, 324 P.3d at 932; Botelho v. Atlas Recycling Ctr., LLC, 146 Hawaiʻi 435, 447 n.9, 463 P.3d 1092, 1104 n.9 (2020) (taking judicial notice of information on a government website, as it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned[]" (quoting HRE Rule 201)); Sierra Club v. D.R. Horton-Schuler Homes, LLC, 136 Hawaiʻi 505, 518 n.5, 364 P.3d 213, 226 n.5 (2015) (same).

As discussed above, at trial, the citing officer testified that he stopped Kaluau "on Hawaii Belt Road in the vicinity of fronting this courthouse." This court takes judicial notice of the fact that when the officer testified, the Kona District Courthouse was located at 79-1020 Haukapila Street,[7/] which intersects with Hawaiʻi Belt Road in the vicinity of the courthouse, in the section of Hawaiʻi Belt Road that stretches from its intersection with Route 19 in Hilo to Kailua-Kona. See State v. Puaoi, 78 Hawaiʻi 185, 191, 891 P.2d 272, 278 (1995) (holding that "geographical facts, such as whether a particular address is within a certain city and county of the state, is a proper matter subject to judicial notice"); State v. Akau, 118

---

[6/] (...continued)
Hawaii, https://hidot.hawaii.gov/highways/home/hawaii/ (emphasis added).

[7/] The former location of the courthouse is judicially noticeable as it is "generally known within the territorial jurisdiction of the trial court." HRE Rule 201(b). As of September 3, 2019, the courthouse has relocated to 74-5451 Kamakaeha Avenue in Kailua-Kona. See https://www.courts.state. hi.us/news_and_reports/2019/08/new-keahuolu-courthouse-opens-september-3.

Hawai'i 44, 57, 185 P.3d 229, 241 (2008) (taking judicial notice of the distance between the Daiei store and the place where the search warrant was executed). Accordingly, we take judicial notice of the fact that the section of Hawai'i Belt Road where the alleged offense occurred was on a "public highway" pursuant to HRS § 291E-1(4) and HRS § 264-1(a)(1). See Davis, 133 Hawai'i at 122, 324 P.3d at 932. Therefore, sufficient evidence was adduced to prove that Kaluau operated his vehicle on a "public way."

(2) Kaluau also contends that the district court's Tachibana colloquy, conducted before the start of trial and again before the defense rested, was defective.

In State v. Martin, 146 Hawai'i 365, 378-79, 463 P.3d 1022, 1035-36 (2020), the Hawai'i Supreme Court summarized the relevant case law as follows:

> Our law protects both the right to testify and the right not to testify. State v. Celestine, 142 Hawai'i 165, 169, 415 P.3d 907, 911 (2018). Tachibana v. State, 79 Hawai'i 226, 900 P.2d 1293 (1995), established the requirement that when a defendant in a criminal case indicates an intention not to testify, the trial court must advise the defendant of the right to testify and must obtain an on-the-record waiver of the right. 79 Hawai'i at 236, 900 P.2d at 1303. We stated that this advisement should consist of informing the defendant (1) that they have a right to testify, (2) that if they want to testify, no one can prevent them from doing so, and (3) that if they testify, the prosecution will be allowed to cross-examine them. 79 Hawai'i at 236 n.7, 900 P.2d at 1303 n.7. We also stated that in connection with the privilege against self-incrimination, the defendant should also be advised (4) that they have a right not to testify and (5) that if they do not testify, then the jury can be instructed about that right. Id. (citations omitted). In a bench trial, defendants must be advised that if they exercise their right not to testify, no inference of guilt may be drawn for exercising this right, i.e., that a decision not to testify cannot be used against a defendant by the judge in deciding the case. State v. Monteil, 134 Hawai'i 361, 371-72, 341 P.3d 567, 577-78 (2014).
>
> After Tachibana, we also held that a second component of the Tachibana colloquy involves the court engaging in a true "colloquy" with the defendant. Celestine, 142 Hawai'i at 170, 415 P.3d at 912, citing State v. Han, 130 Hawai'i 83, 90-91, 306 P.3d 128, 135-36 (2013). This requires "a verbal exchange between the judge and the defendant 'in which the judge ascertains the defendant's understanding of the proceedings and of the defendant's rights.'" Celestine, 142 Hawai'i at 170, 415 P.3d at 912 (citing

> Han, 130 Hawaiʻi at 90, 306 P.3d at 135 (emphasis omitted)).
>
> . . . .
>
> A defendant's right to testify is violated when the colloquy does not establish "an objective basis for finding that [the defendant] knowingly, intelligently, and voluntarily gave up" their right to testify. Han, 130 Hawaiʻi at 91, 306 P.3d at 136. Courts look to the totality of the facts and circumstances to determine whether a waiver of the right to testify was voluntarily and intelligently made. 130 Hawaiʻi at 89, 306 P.3d at 134.

146 Hawaiʻi at 378-79, 463 P.3d at 1035-36 (footnotes omitted).

Additionally, in State v. Lewis, 94 Hawaiʻi 292, 12 P.3d 1233 (2000), the supreme court adopted a prospective requirement that, "prior to the start of trial, trial courts must '(1) inform the defendant of his or her personal right to testify or not to testify and (2) alert the defendant that if he or she has not testified by the end of the trial, the court will briefly question the defendant to ensure that the decision not to testify is the defendant's own decision.'" State v. Monteil, 134 Hawaiʻi 361, 371, 341 P.3d 567, 577 (2014) (quoting Lewis, 94 Hawaiʻi at 297, 12 P.3d at 1238); see also id. at 373, 341 P.3d at 579 (adopting a prospective rule that trial courts are required to inform defendants during the Lewis advisement that the decision not to testify cannot be used by the fact finder to decide the case).

Kaluau first argues that the district court's pre-trial advisement was defective under Lewis because the court did not inform Kaluau that if he did not testify by the end of the trial, the court would briefly question him to ensure that the decision not to testify was his own.

Prior to trial, the district court engaged in the following colloquy with Kaluau:

> THE COURT: . . . .
>
> And I'm going to give Mr. Kaluau his advisement of rights. It's what we refer to as the *Tachibana* colloquy. So, Mr. Kaluau, do you understand that you have a constitution[al] right to testify in your own defense? Do you understand that?
>
> THE DEFENDANT: Yeah.

7

THE COURT: Yes? Okay. And do you understand if you want to testify no one can prevent you from doing so. You understand?

THE DEFENDANT: Yeah.

THE COURT: Okay. And that if you testify the Prosecuting Attorney . . . will be allowed to cross-examine you. You understand? Yes?

THE DEFENDANT: Yeah.

THE COURT: You nodded your head, okay.

And you understand your Constitutional right to testify in your own defense is your decision. And no one can force you to testify.

THE DEFENDANT: My Constitutional right as an American or as a Hawaiian Kingdom subject?

THE COURT: As a person.

THE DEFENDANT: As a person?

THE COURT: Okay. You understand? Yes?

THE DEFENDANT: Yes.

THE COURT: Okay. And you understand that your Constitutional right not to testify and to remain silent, that is also your choice and the Court cannot hold that against you. You understand?

THE DEFENDANT: Yeah.

THE COURT: Yes? Okay.

THE DEFENDANT: Yes.

THE COURT: Okay. So do you have any questions?

THE DEFENDANT: No.

Although this colloquy was extensive, it did not inform Kaluau that if he did not testify by the end of the trial, the court would briefly question him to ensure the decision not to testify was his own. Because Lewis requires this advisement, its omission was error.

"[A] court's failure to properly deliver the pretrial advisement is subject to the actual prejudice standard so long as the trial court subsequently engages the defendant in the ultimate Tachibana colloquy. When the ultimate colloquy is not given, however, a Lewis violation is evaluated under the harmless beyond a reasonable doubt standard." State v. Torres, 144 Hawaiʻi 282, 291 n.10, 439 P.3d 234, 243 n.10 (2019) (construing

8

Lewis, 94 Hawaiʻi at 297, 12 P.3d at 1238, and Tachibana, 79 Hawaiʻi at 237, 240, 900 P.2d at 1304, 1307).

Here, the ultimate colloquy was given, though Kaluau was not fully "engaged," as he chose not to cooperate in responding to many, though not all, of the district court's questions. See infra. Kaluau did not establish that he suffered actual prejudice as a result of the district court's failure to alert him that if he did not testify by the end of the trial, the court would briefly question him to ensure the decision not to testify was his. The district court in fact did question Kaluau before the end of the trial for that purpose, and as discussed infra, Kaluau affirmed that he would preserve his right not to testify, and understood that the court would not hold that choice against him. See State v. Deming, No. CAAP-16-0000298, 2017 WL 2364743, at * 1 (Haw. App. May 31, 2017) (SDO) (rejecting the defendant's claim that his pre-trial Tachibana colloquy was inadequate for failure to warn him that he would again be questioned prior to the end of trial, where the district court questioned the defendant prior to the end of trial to ensure that it was his decision not to testify).

Moreover, we conclude that the error at issue was harmless. "We have previously held that when the deficiency in a Tachibana colloquy is not related to the right waived, the error appears harmless." State v. Joo, No. CAAP-19-0000420, 2021 WL 1233382, at *2 (Haw. App. Mar. 31, 2021) (quoting State v. Adcock, 148 Hawaiʻi 308, 316, 473 P.3d 769, 777 (2020)).

> [T]he pretrial advisement was implemented because it would have 'the beneficial effect of limiting any post-conviction claims that a defendant testified in ignorance of his or her right not to testify,' . . . Lewis, 94 Hawaiʻi [at] 297, 12 P.3d [at] 1238 . . ., and would lessen the risk that the ultimate colloquy would inadvertently affect the defendant's right not to testify, Tachibana, 79 Hawaiʻi at 237 n.9, 900 P.2d at 1304 n.9.

State v. Eduwensuyi, 141 Hawaiʻi 328, 335 n.9, 409 P.3d 732, 739 n.9 (2018); see State v. Han, 130 Hawaiʻi 83, 89, 306 P.3d 128, 134 (2013)). Here, Kaluau decided not to testify, thus waiving his right to testify; inasmuch as the pre-trial advisement was deficient with respect to Kaluau's right not to testify, the

error is not related to the right waived, and the error is thus harmless.  In addition, even if the error were related to the right waived, *i.e.*, the right to testify, the error would still be harmless in this circumstance, because the district court did in fact question Kaluau before the end of the trial to ensure that any decision not to testify was his.  See infra.

Kaluau next argues that the district court's ultimate Tachibana colloquy was defective because it was not given immediately before the defense rested, *i.e.*, after all defense witnesses had testified, and because the trial court did not elicit affirmative responses from Kaluau.

As to the timing of the ultimate colloquy, it appears that on March 29, 2019, defense counsel suggested that the court conduct the colloquy, after Kaluau's motion for judgment of acquittal had been denied.  At that time, the following exchange occurred:

> THE COURT: . . .  So Court is denying your motion for judgment of acquittal.
>
> Do you have any further arguments you wanna present in case I change my mind on what I just said?
>
> [DEPUTY PROSECUTING ATTORNEY (**DPA**)]:  I have no further arguments, Your Honor.
>
> [DEFENSE COUNSEL]:  No, Your Honor.  Did the Court want to advise him at this time about his right to testify?
>
> THE COURT: Okay. . . .

It also appears that when defense counsel suggested that the court conduct the ultimate colloquy, counsel did not intend to call any witnesses, but following the colloquy, counsel changed his mind.  At that time, this discussion occurred:

> THE COURT:  . . . .
>
> . . . So closing arguments?
>
> . . . .
>
> THE COURT:  Or . . . do you have any witnesses?
>
> [DEFENSE COUNSEL]:  No, there's --
>
> . . . .
>
> [DEFENSE COUNSEL]:  -- no further witnesses.

> THE COURT: Okay. So, um, you wanna go ahead and do your closing arguments?
>
> . . . .
>
> [DEFENSE COUNSEL]: Actually, uh, I'm sorry, Your Honor. May I . . . have just one --
>
> THE COURT: Sure.
>
> [DEFENSE COUNSEL]: -- second to consult further?
>
> Your Honor, the Defense would call Thomas Anthony.

Following the brief testimony of this one witness, the defense stated that it had no other witnesses. Defense counsel then asked the district court to take under advisement the issue of whether the alleged offense occurred in the County and State of Hawaiʻi, before the court issued its decision. The court indicated that it would review the trial transcripts and ordered the parties to return on April 18, 2019.

On April 18, 2019, the court announced that it had reviewed the trial tapes and had determined that the citing officer had testified that he was in the County and State of Hawaiʻi when he stopped Kaluau. The court then reviewed its notes to determine whether closing arguments had occurred, and asked defense counsel, "[D]oes your client have any other, um, witnesses other than, uh, we had Thomas Anthony[?]" Defense counsel then stated, apparently to Kaluau, "You don't need to testify do you?" Kaluau responded, "No, I-" and the court noted that it had already questioned Kaluau regarding not testifying.

Under these circumstances, we conclude that the district court did not err in conducting the ultimate colloquy when it did. See Tachibana, 79 Hawaiʻi at 237 n.9, 900 P.2d at 1304 n.9 ("[T]he trial court judge cannot independently foresee when the defense is on the verge of resting and conduct the colloquy at that precise moment. Consequently, the trial courts will require the cooperation of defense counsel to enable them to conduct the colloquy immediately prior to the close of the defendant's case.")

As to the substance of the ultimate colloquy, the district court engaged in the following exchange with Kaluau:

11

THE COURT: . . . Mr. Kalua'u, . . . right now I have to ask you and, um, need your answers, um, so that you understand that you have a right to testify. You understand?

THE DEFENDANT: Uh, no comment.

THE COURT: Okay. And if you want to testify no one can prevent you from doing so. You understand?

THE DEFENDANT: No comment.

THE COURT: You understand that if you testify the prosecutor can cross-examine you. You understand?

THE DEFENDANT: No comment.

THE COURT: And you understand that if you -- you also have a right not to testify, and if you do not testify the Court cannot hold your silence against you. You understand?

THE DEFENDANT: Uh, no comment.

THE COURT: Do you understand what I'm saying though? Do you understand --

THE DEFENDANT: Oh, yeah. I just wanna --

THE COURT: -- the English language?

THE DEFENDANT: -- address the Court. I the house of nobles for the Ka'u district, district 7, and I'm here for the acquittal today and nothing else. I have no comment.

THE COURT: Okay. So you do have a right to take the stand, and if you take the stand the prosecutor . . . would be allowed to cross-examine you. You understand that?

THE DEFENDANT: Yeah, no comment.

THE COURT: Okay. So what is your decision? Do you want to testify today? Do you wanna take the stand and testify and be sworn in?

THE DEFENDANT: Uh, no comment. This the second time I'm here for acquittal. Last month and this --

THE COURT: Okay, but we're here --

THE DEFENDANT: -- month.

THE COURT: We're -- we're gonna finish the trial so right now we're at a point where, um --

THE DEFENDANT: Well --

THE COURT: -- I need to find out if you're going to testify or not.

THE DEFENDANT: I rest.

THE COURT: Okay. So you will not be testifying?

THE DEFENDANT: Yeah.

12

At this point, the DPA reminded the district court that "the Tachibana colloquy requires that [Kaluau] . . . understands . . . his rights, and [Kaluau] is . . . frustrating the court process by refusing to answer the questions."  The district court then attempted to repeat the colloquy, during which this exchange occurred:

> THE COURT:  . . . .
>
> So I need to ask you again do you understand your right to testify and your right not to testify?  You understand?
>
> THE DEFENDANT:  I rest.
>
> . . . .
>
> THE COURT:  . . . I do need to get answers about whether you understand your constitutional right to testify.
>
> THE DEFENDANT:  Well, I have --
>
> THE COURT:  You understand?
>
> THE DEFENDANT:  -- no comment.
>
> THE COURT:  So if you decide not to testify and you remain silent, uh, the Court won't hold that -- your silence against you.  You understand that?  I'm not gonna hold your silence against you.
>
> THE DEFENDANT:  No comment.
>
> THE COURT:  <u>So are you going to take the stand and testify or are you gonna, um, sit down and remain silent and not testify</u>?
>
> THE DEFENDANT:  <u>Remain silent</u>.  No comment.
>
> . . . .
>
> THE COURT:  Okay.  <u>So the Court by what Mr. Kalua'u has said he does not wanna take the stand.  He does not wanna be sworn in and be cross-examined, and he's gonna preserve his right not to testify and remain silent and I will not hold that against you.  You understand</u>?
>
> THE DEFENDANT:  <u>Yeah</u>.

(Emphases added.)  Following this exchange, the district court found that Kaluau had chosen not to testify and, based on his answers, Kaluau's waiver of his right to testify was voluntary, intelligent and knowing.

We look to "the totality of the facts and circumstances" to determine whether Kaluau's waiver of his right

to testify was voluntarily and intelligently undertaken.  Han, 130 Hawaiʻi at 89, 306 P.3d at 134 (quoting State v. Friedman, 93 Hawaiʻi 63, 66-67, 996 P.2d 268, 273-74 (2000)); see also Eduwensuyi, 141 Hawaiʻi at 335 n.10, 409 P.3d at 739 n.10 ("Our analysis is not meant to indicate that a pretrial colloquy cannot be considered as part of the totality of facts and circumstances in an evaluation of whether a particular defendant's waiver was knowing and voluntary.")  We first note that, based on various statements made by Kaluau during trial, he had a good command of English and did not require an interpreter.  Cf. Han, 130 Hawaiʻi at 92, 306 P.3d at 137 ("The language barrier in this case was a 'salient fact' that impacted Petitioner's ability to understand the rights that he waived." (citing State v. Barros, 105 Hawaiʻi 160, 170, 95 P.3d 14, 24 (App. 2004))).  Indeed, Kaluau expressed familiarity with certain legal principles, including his right to counsel, and "[his] Constitutional right [to testify] as an American or as a Hawaiian Kingdom subject[.]"  Additionally, there is no indication in the record that Kaluau suffered from mental illness or impaired faculties.  See id. ("'Salient facts,' such as mental illness or language barriers, require that a court effectively engage the defendant in a dialogue that will effectuate the rationale . . . set forth in Tachibana.")

In this context, the district Court engaged Kaluau in a true pre-trial colloquy regarding his rights to testify and not to testify.  In response to the court's questioning, Kaluau affirmed that he understood that:  (1) he had a constitutional right to testify in his own defense; (2) if he wanted to testify no one could prevent him from doing so; (3) if he testified, the prosecuting attorney would be allowed to cross-examine him; (4) his constitutional right "as a person" to testify in his own defense was his own decision, and no one could force him to testify; and (5) his constitutional right not to testify and to remain silent was his choice, and the district court could not hold that against him.  Kaluau then responded "[n]o" when asked if he had any questions.  For the reasons previously discussed, we have concluded that the district court's error in delivering the pretrial advisement — by failing to inform Kaluau that if he

did not testify by the end of the trial, the court would briefly question him to ensure that the decision was his — was harmless.

After the State completed its case in chief, the district court again advised Kaluau of his rights to testify and not to testify, as required by <u>Tachibana</u>. Given the absence of a language barrier or mental illness, and in light of the pre-trial colloquy that had occurred, the record indicates that Kaluau still understood his rights when he was again advised of them during the ultimate colloquy. In this regard, there is also nothing in the record indicating that Kaluau did <u>not</u> understand his rights. Nevertheless, it appears that Kaluau chose not to cooperate in responding to many of the district court's questions, stating at one point, "I'm here for the acquittal today and nothing else. I have no comment." In fact, Kaluau simply responded, "no comment" or "I rest," to most of the court's questions. It is significant, however, that during the ultimate colloquy, Kaluau affirmed that he understood what the district court was saying to him, and that at the end of the colloquy, when asked if "[he was] going to take the stand and testify or . . . sit down and remain silent and not testify?" he responded, "Remain silent. No comment." Importantly, Kaluau also responded affirmatively to the following statement and question by the district court: "So the Court by what Mr. Kalua'u has said he does not wanna take the stand. He does not wanna be sworn in and be cross-examined, and he's gonna preserve his right not to testify and remain silent and I will not hold that against you. You understand?"

Based on the "the totality of the facts and circumstances" in this case, as reflected in the entire record, we conclude that the district court's ultimate <u>Tachibana</u> colloquy with Kaluau was sufficient. When that colloquy is evaluated in conjunction with the court's pretrial colloquy and relevant circumstances, the record firmly establishes that Kaluau understood his rights to testify and not to testify and that he did not wish to testify. We further conclude that the record provides an objective basis for the district court's finding that Kaluau made a voluntary, intelligent and knowing decision not to

testify.  Given the record, we reject Kaluau's challenge to the
<u>Tachibana</u> colloquy in this case.

Therefore, IT IS HEREBY ORDERED that the Judgment and
Notice of Entry of Judgment, entered on April 18, 2019, in the
District Court of the Third Circuit, North and South Kona
Division, is affirmed.

DATED:  Honolulu, Hawaiʻi, June 28, 2021.


On the briefs:

William K. Li
for Defendant-Appellant.

Stephen L. Frye,
Deputy Prosecuting Attorney,
County of Hawaiʻi,
for Plaintiff-Appellee.

/s/ Katherine G. Leonard
Presiding Judge


/s/ Keith K. Hiraoka
Associate Judge


/s/ Clyde J. Wadsworth
Associate Judge